# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ULSTER

| | |
|---|---|
| **KRISTINA SARHADI**, | Index No._____ |
| Plaintiff, | |
| - against - | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **JUSTIN CATHAL GEEVER** a/k/a **JUSTIN SANE**, **HARDWORK DISTRIBUTION, INC.**, and **DOE 1**, | |
| Defendants. | |

Plaintiff Kristina Sarhadi ("Plaintiff"), by and through her undersigned attorneys, brings this action against Defendants Justin Cathal Geever a/k/a Justin Sane ("Geever"), Hardwork Distribution, Inc. ("Hardwork"), and Doe 1 (collectively "Defendants"), and she alleges as follows:

**PRELIMINARY STATEMENT**

1. This complaint is filed pursuant to New York's Adult Survivors Act ("ASA"), New York Civil Practice Law and Rules ("CPLR") section 214-j. The ASA has brought a historic one-year window for survivors of sexual abuse in the State of New York to pursue lapsed claims.

2. Plaintiff timely brings her causes of action within the "retroactive revival window" of the ASA, which removes the previously applicable statute of limitations. Pursuant to the ASA, Defendants are liable for the intentional and negligent acts and omissions that resulted in Plaintiff being a victim of sexual assault and caused her serious psychological, physical, and emotional harm.

## NATURE OF THE ACTION

3. Plaintiff Kristina Sarhadi is a survivor of adult sexual assault at the hands of Defendant Justin Cathal Geever, who goes by the stage name Justin Sane.

4. Defendant Geever forced himself onto Plaintiff, strangled her, forced her to perform oral sex on him, and raped her one night in October 2010.

5. This action alleges physical, psychological, and emotional injuries suffered as a result of conduct that would constitute a sexual offense as defined in Article 130 of the New York Penal Law, including, *inter alia*, forcible touching, criminal sexual acts, sexual abuse, and rape. *See* Penal Law §§ 130.20 – 130.65.

6. The conduct alleged herein would constitute a sexual offense as defined in Article 130 of the New York Penal Law in that, at all relevant times, the conduct lacked consent from Plaintiff.

7. The conduct lacked consent from Plaintiff because the sexual offenses were accomplished using forcible compulsion, coercion, and intimidation, and Defendant Geever continued assaulting Plaintiff despite her repeatedly telling him to stop.

8. On information and belief, Defendant Geever engaged in a pattern of targeting and then physically and sexually abusing young women and underage girls over a period of nearly two decades before Plaintiff met him.

9. Currently, on information and belief, at least 12 additional women have come forward to accuse Defendant Geever publicly of using his power as a famous music performer to engage in predatory behavior, sexual assault, and statutory rape, and there are many other women who have attested to his misconduct.

10. On information and belief, the Defendant entities were aware of Defendant Geever's practice of sexually assaulting young women and girls, and they aided and abetted such behavior.

11. As a result of Defendant Geever's sexual assault, as well as the Defendant entities' negligent acts and omissions, Plaintiff has suffered severe emotional, physical, and psychological distress, including shame, guilt, economic loss of earning capacity, and emotional loss.

12. Plaintiff brings this action to recover for the injuries she has endured because of the actions of Defendants and to make sure no one else is forced to suffer the abuse and physical and mental trauma she felt and continues to feel to this day.

## PARTIES

13. Plaintiff is and at all relevant times was a citizen of the United States and a resident of the state of New York.

14. At all times relevant to the wrongful conduct set forth herein, Plaintiff was over the age of 18.

15. Plaintiff is an adult female currently residing in Ulster County, New York.

16. On information and belief, Defendant Geever is and at all relevant times was a citizen of the United States and a resident of Allegheny County, Pennsylvania.

17. Defendant Geever is an adult male. Defendant Geever was the lead guitarist, singer, and songwriter for a punk rock band with left-wing political views called Anti-Flag from 1988 until July 2023 when the band disbanded. On information and belief, Defendant Geever is the registered President of Defendant Hardwork and is affiliated with and/or an employee or agent of Doe 1.

18. On information and belief, Defendant Hardwork is a domestic business corporation incorporated in Pennsylvania and headquartered in Pittsburgh, Pennsylvania. On information and belief, Defendant Hardwork was formed in 2003 by Defendant Geever and other members of Anti-Flag. On information and belief, Defendant Geever is the registered

President of Defendant Hardwork, and other members of the band serve as Vice President, Secretary, and Treasurer.

19. Plaintiff is informed and believes and thereon alleges that the true name and capacity, whether individual, corporate, associate, or otherwise of the Defendant named herein as Defendant Doe 1 is unknown to Plaintiff, who therefore sues Defendant Doe 1 by such fictitious name, and who will amend the Complaint to show its true name and capacity when such name has been ascertained pursuant to CPLR § 1024. Plaintiff is informed and believes and thereon alleges that Doe 1 is legally responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

20. Whenever reference is made to any Defendant entity, such reference includes that entity, its parent companies, subsidiaries, affiliates, predecessors, and successors. In addition, whenever reference is made to any act, deed, or transaction of any entity, the allegation means that the entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the entity's business or affairs.

21. The limitations of Article 16 of the CPLR do not apply because one or more of the exceptions set forth in CPLR § 1601 and/or § 1602 apply.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over Defendants pursuant to CPLR § 302 as Defendants committed the tortious acts and omissions within the State of New York.

23. Venue for this action is proper in the County of Ulster pursuant to CPLR § 503 because Ulster is the County in which Plaintiff currently resides and where a substantial part of the events giving rise to the claim occurred.

24. This Court has jurisdiction over this action because the amount of damages Plaintiff seeks exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

## FACTUAL ALLEGATIONS

25. At all times material, Geever was a prominent and influential figure in the punk rock music industry, specifically his public activism on the subject of protecting women from violence.

26. Sometime in 1988, Anti-Flag formed with Geever as the lead guitarist, singer, and songwriter. The band's "straight edge" platform was anti-drugs, anti-alcohol, and promoted feminism.

27. Beginning in 2000, when Plaintiff was 11 years old, she began listening to Anti-Flag. She went to numerous concerts with her friends, and she appreciated the band's political views concerning social justice, politics, and feminism.

28. Anti-Flag, and Geever in particular, wrote and sang lyrics consistent with these views, which attracted young female fans by making them feel like they were in a like-minded, safe community. These views, especially feminism, distinguished Anti-Flag from other bands in the punk rock scene, and the fans, including Plaintiff, believed whole-heartedly that the band members practiced what they preached.

29. Anti-Flag was Plaintiff's favorite band, and she listened to their music throughout her teenage years and through college.

30. Unbeknownst to Plaintiff, on information and belief, dating back to the 1990s, Defendant Geever had a history of targeting, grooming, and physically and sexually assaulting young women and underage girls. Throughout Plaintiff's teenage and young adult life, she remained unaware of Defendant Geever's history of sexual abuse towards women and girls.

5

31. On September 22, 2010, after graduating college, Plaintiff attended an Anti-Flag concert at a venue called the Bell House in Brooklyn, New York.

32. Plaintiff watched from the front row. Geever then locked eyes with her and began singing to her and winking at her.

33. After the concert, Geever jumped off the stage, hugged Plaintiff, and asked for her name and where she was from.

34. Geever was initially flirtatious toward Plaintiff; however, the flirty nature was not reciprocated because Plaintiff had a long-time boyfriend, which she told Geever in their first conversation and each one thereafter. Plaintiff made it clear to Geever that she was in a committed relationship and not romantically interested in him.

35. Geever subsequently invited Plaintiff to a film festival where he planned to perform the following week.

36. As a loyal fan of Anti-Flag and trusting in Geever's strong feminist stance, Plaintiff felt safe in his presence and agreed to meet him at the festival.

37. Plaintiff also knew that Geever had a serious girlfriend who, on information and belief, may have been his fiancé, which further diffused any concerns she might have about his intentions. Plus, he was almost twice her age.

38. On October 1, 2010, Plaintiff arrived at the screening at the Bearsville Theatre in Woodstock, New York.

39. Plaintiff waited for Geever to let her in at the gate, as he said he would, but Geever never came, and Plaintiff missed the screening.

40. Plaintiff did, however, attend Geever's acoustic performance at the festival in the same theatre. She once again sat in the front row for his performance.

41. After his performance, Geever asked Plaintiff to accompany him to the afterparty.

42. She drove, and once in her grandfather's Buick, Geever began showering Plaintiff with compliments. Plaintiff made it clear that she had a boyfriend and was in a committed relationship.

43. They talked about music and concerts, and Plaintiff thought they were developing a friendship. Geever also mentioned the death of his nephew and his partner cheating on him and moving to London, which garnered Plaintiff's sympathy.

44. Once they arrived at the house party, Geever paraded Plaintiff around as one of his fans, prompting her to praise him as a rock star. She eventually became annoyed and bored with his behavior and went outside to converse with others.

45. When the party was over and Plaintiff was ready to leave, Geever mentioned that he had recorded a song with Billy Bragg, and he wanted her to be the first to hear it.

46. Geever told Plaintiff that the song was on his laptop at his motel. Plaintiff agreed to go with him to his motel, The Lodge, in order to hear the song.

47. On the way to his motel, The Lodge, Geever turned emotional again while talking about his nephew and his partner.

48. Geever told Plaintiff that they should stop at a bar and drink together, despite his and Anti-Flag's pro-sobriety messaging. At the time, Plaintiff had been "straight edge," which means she did not do drugs or drink alcohol. Geever acknowledged their mutual "straight edge" stance, but he suggested they should "break edge" that night, since they were each dealing with unfortunate personal circumstances.

49. When they arrived at the bar in the motel, Geever ordered beers and pickleback shots.

50. Geever continued drinking and dancing in the bar while Plaintiff waited patiently to listen to the song recorded with Billy Bragg.

51. At some point in the night, Geever and Plaintiff walked to Geever's motel room to listen to the song.

52. While in Geever's room, Plaintiff observed that it was tiny, had wooden bunk beds, white floors, and a dresser. Plaintiff noticed that Geever's laptop bag laid on the dresser and remembered that Geever had told her the song was on his laptop.

53. Plaintiff turned to Geever and was surprised to see that he was closing the curtains and locking the door.

54. As Plaintiff looked back at the laptop bag and waited to hear the song, Geever screamed, "Football Tackle!" and suddenly tackled Plaintiff from behind onto the bed.

55. Plaintiff initially thought Geever was playing around, but when she saw his face and his expressions, she knew something was wrong.

56. Geever began restraining and strangling Plaintiff, and he forced her to perform oral sex on him.

57. When she could breathe, she repeatedly pleaded with him to stop.

58. She was shocked and crying. He was mean and violent with Plaintiff; she did not matter and was just an object for him to dominate.

59. Geever penetrated Plaintiff's vagina with his penis. Plaintiff did not consent.

60. When Geever finished with Plaintiff, he passed out on top of her.

61. Plaintiff was then able to escape Geever's motel room without waking him.

## **PLAINTIFF'S DAMAGES**

62. In addition to the damages mentioned above, as a direct and proximate result of Defendants' tortious acts and omissions, Plaintiff suffered, continues to suffer, and will suffer in the future, psychological injuries, including but not limited to, low self-esteem, anxiety, panic attacks, post-traumatic stress disorder, eating disorders, stress, insomnia, nightmares, depression, suicidality, shame, disassociation, intimacy issues, fear, and trust issues. Plaintiff

has been diagnosed with and treated for, *inter alia*, C-PTSD, clinical depression, ADHD resulting from trauma, emotional hyperarousal, and rejection sensitivity dysphoria. All these injuries caused and will cause Plaintiff noneconomic damages. Plaintiff also suffered and continues to suffer economic damages in the form of loss of past and future income and costs of medical and mental health treatment.

63. Defendants acted with an outrageous indifference to a highly unreasonable risk of harm and with a conscious indifference to the health, safety, and welfare of Plaintiff. Therefore, Plaintiff is entitled to punitive damages against Defendants.

## FIRST CAUSE OF ACTION
## ASSAULT

*Plaintiff Against Defendant Geever*

64. Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs as if set forth here in full.

65. Defendant Geever's conduct constitutes a sexual offense as defined in Article 130 of New York Penal Law, including, but not limited to, the following: sexual misconduct (N.Y. Penal Law § 130.20); rape (N.Y. Penal Law §§ 130.25 – 130.35); forcible touching (N.Y. Penal Law § 130.52); and/or sexual abuse (N.Y. Penal Law §§ 130.55 – 130.65).

66. Defendant Geever's predatory, abusive, and manipulative behavior, as well as his unlawful touching, acts, and conduct against Plaintiff created a reasonable apprehension in Plaintiff of harmful or offensive contact as to her person, all of which was done intentionally by Defendant Geever to Plaintiff without her consent.

67. When Plaintiff was alone with Defendant Geever in his small motel room, Defendant Geever's physical conduct placed Plaintiff in imminent apprehension of harmful and offensive contact.

68. Plaintiff did not consent to Defendant Geever's harmful and offensive contact, and she made her lack of consent known when she could.

69. Defendant Geever knew that these acts and his conduct would cause Plaintiff to apprehend harmful or offensive contact, and Plaintiff reasonably apprehended that harmful or offensive contact would occur.

70. Defendant Geever was capable of carrying out the attempted conduct and did carry out the rape of Plaintiff.

71. As a direct and proximate result of the above-described conduct, Plaintiff has suffered, and will continue to suffer, great pain of mind and body, shock, emotional distress, discomfort, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. She was prevented, and will continue to be prevented, from performing daily activities and obtaining the full enjoyment of life. She has sustained, and will continue to sustain, loss of earnings and earning capacity. She has incurred, and will continue to incur, expenses for medical and psychological treatment, therapy, and counselling.

72. Plaintiff is therefore entitled to monetary relief, in the form of compensatory damages, to remedy the severe emotional distress suffered as a result of Defendant Geever's intentional and outrageous conduct.

73. Defendant Geever's conduct was intentional, extreme, and outrageous, entitling Plaintiff to an award of punitive damages.

74. This action falls within the exceptions of Article 16 of the CPLR.

### SECOND CAUSE OF ACTION
### BATTERY/SEXUAL BATTERY

*Plaintiff Against Defendant Geever*

75. Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs as if set forth here in full.

76. In or around October 2010, Defendant Geever engaged in a course of unpermitted, harmful, and offensive bodily sexual contact upon the person of Plaintiff.

77. Defendant Geever intended to commit an act of unwanted contact and/or caused imminent apprehension of such an act against Plaintiff. He did so by, *inter alia*:

    a. locking Plaintiff in his motel room and isolating her in close quarters;

    b. tackling and physically restraining Plaintiff on the bed;

    c. choking Plaintiff with his hands for his own sexual gratification;

    d. forcing oral sex on Plaintiff; and

    e. forcibly penetrating Plaintiff with his penis.

78. Plaintiff was 21 years old at the time of the sexual assault.

79. Plaintiff did not consent to the harmful bodily contact and made her lack of consent known repeatedly to Defendant Geever as he sexually assaulted her.

80. Defendant Geever's conduct constitutes a sexual offense as defined in Article 130 of New York Penal Law, including, but not limited to, the following: sexual misconduct (N.Y. Penal Law § 130.20); rape (N.Y. Penal Law §§ 130.25 – 130.35); forcible touching (N.Y. Penal Law § 130.52); and/or sexual abuse (N.Y. Penal Law §§ 130.55 – 130.65).

81. As a direct and proximate result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

82. This action falls within the exceptions of Article 16 of the CPLR.

### THIRD CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*Plaintiff Against Defendant Geever*

83. Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs as if set forth here in full.

84. Defendant Geever's conduct constitutes a sexual offense as defined in Article 130 of New York Penal Law, including, but not limited to, sexual misconduct (N.Y. Penal Law § 130.20); rape (N.Y. Penal Law §§ 130.25 – 130.35); forcible touching (N.Y. Penal Law § 130.52); and/or sexual abuse (N.Y. Penal Law §§ 130.55 – 130.65).

85. The wrongful actions of Defendant Geever in sexually abusing Plaintiff were extreme and outrageous and should shock the conscience of the Court.

86. Defendant Geever's outrageous conduct included, *inter alia*:

   a. locking Plaintiff in his motel room and isolating her in close quarters;

   b. tackling and physically restraining Plaintiff on the bed;

   c. choking Plaintiff with his hands for his own sexual gratification;

   d. forcing oral sex on Plaintiff;

   e. ignoring Plaintiff's cries for him to stop; and

   f. forcibly penetrating Plaintiff with his penis.

87. Through his above-described abuse, Defendant Geever intentionally caused severe emotional distress to Plaintiff, or disregarded the substantial probability of causing severe emotional distress to Plaintiff. Defendant Geever engaged in this conduct by using his position as a famous pro-feminist musician to sexually exploit and abuse Plaintiff.

88. Defendant Geever knew that Plaintiff was going to be sexually assaulted when he invited her to his motel room when she was 21 years old.

89. Defendant Geever's misconduct was so shocking and outrageous that it exceeded the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by Defendant Geever of the consequences that would follow.

90. Defendant Geever knew that his reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on Plaintiff. Plaintiff, as a young adult, did in fact suffer severe emotional and psychological distress and personal physical injury, including severe mental anguish, humiliation, and emotional and physical distress. Plaintiff's emotional distress continues to be severe.

91. Defendant Geever's misconduct cannot be fairly described as merely negligent, but instead reflects outrageous behavior and an intentional or reckless indifference to the extreme distress that it would cause Plaintiff.

92. Plaintiff should be awarded compensatory damages against Defendant Geever in an amount to be determined at trial, but no less than any required jurisdictional amount of this Court.

93. Plaintiff's injuries were proximately caused by Defendant Geever's wrongful conduct, which arose from his malicious, evil, and sadistic motives. Therefore, Plaintiff also seeks punitive damages for this cause of action in a sum to be determined at trial.

94. This action falls within the exceptions to Article 16 of the CPLR.

## FOURTH CAUSE OF ACTION
## NEGLIGENCE

*Plaintiff Against Defendant Hardwork and Defendant Doe 1*

95. Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs as if set forth here in full.

96. Defendant Geever's conduct constitutes a sexual offense as defined in Article 130 of New York Penal Law, including, but not limited to, sexual misconduct (N.Y. Penal Law § 130.20); rape (N.Y. Penal Law §§ 130.25 – 130.35); forcible touching (N.Y. Penal Law § 130.52); and/or sexual abuse (N.Y. Penal Law §§ 130.55 – 130.65).

97. Prior to the sexual assault described above, Defendants Hardwork and Doe 1 knew or should have known that Defendant Geever habitually and routinely engaged in sexual misconduct with young women and underage girls throughout the country.

98. Prior to the sexual assault described above, Defendants Hardwork and Doe 1 knew or should have known that Defendant Geever was a serial sexual predator and/or sexually assaulted children and women.

99. Defendants Hardwork and Doe 1 owed Plaintiff a duty to protect her from harm because Defendant Geever's actions created a foreseeable risk of harm to Plaintiff.

100. Defendants Hardwork and Doe 1 owed Plaintiff a duty because they were in a position to control Defendant Geever's access to young women and underage fans.

101. Defendants Hardwork and Doe 1 owed Plaintiff a duty because they invited Plaintiff onto the premises and facilities they funded (performance venues, motel) and Defendant Geever posed a dangerous condition at these facilities.

102. Defendants Hardwork and Doe 1 had a duty of reasonable care to enact policies and procedures to protect fans, such as Plaintiff, from sexual assault by performers and other persons in authority, such as Defendant Geever.

103. Defendants Hardwork and Doe 1 knew or should have known that Defendant Geever had a history of grooming and assaulting female fans in motel rooms, as well as Defendant Geever's propensity generally of sexually assaulting women, before Defendant Geever sexually assaulted Plaintiff.

104. Defendants Hardwork and Doe 1 knew or should have known that Defendant Geever used the power, influence, status, and facilities provided by Defendants to access and sexually assault women.

105. Plaintiff met Defendant Geever at multiple live performances, and after one performance, he engaged in the illegal, harmful, and offensive sexual assault of Plaintiff in a motel room.

106. Defendants Hardwork and Doe 1 created a foreseeable risk of harm to Plaintiff. As a young woman who Defendant Geever targeted in the venues, facilities, and motel rooms provided by Defendants Hardwork and Doe 1, Plaintiff was a foreseeable victim.

107. Defendants Hardwork and Doe 1 knew or should have known that the young women exposed to Defendant Geever were at risk of sexual assault by Defendant Geever.

108. Defendants Hardwork and Doe 1 knew or should have known, and had the opportunity to learn of, the intentional and malicious conduct of Defendant Geever, and thereby ratified and joined in said conduct by failing to terminate, bar, disinvite, publicly admonish, or discipline Defendant Geever and/or by failing to warn anyone of Defendant Geever's known behaviors and/or preventing contact between Defendant Geever and female fans.

109. Rather than take any action to keep Plaintiff and individuals in her position safe, Defendants Hardwork and Doe 1 promoted and financially benefitted from Defendant Geever's predatory and violent character.

110. Defendants Hardwork and Doe 1 breached their duties to Plaintiff. Defendants' failures include, but are not limited to, failure to protect Plaintiff from a known danger, failure to warn Plaintiff of the risk Defendant Geever posed, and failure to take reasonable measures in light of what they knew or should have known.

111. Defendants Hardwork and Doe 1 breached their duties to Plaintiff by providing, arranging, promoting, and permitting Defendant Geever to use his performances as the lead singer of Anti-Flag as a means to access, groom, and sexually assault young women and girls.

112. By failing to address Defendant Geever's sexual assaults of women, Defendants Hardwork and Doe 1 permitted, approved, encouraged, and/or ratified Defendant Geever's sexual assault of Plaintiff.

113. As a direct and proximate result of the foregoing acts of negligence, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

114. This action falls within the exceptions to Article 16 of the CPLR.

### FIFTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

*Plaintiff Against Defendant Hardwork and Defendant Doe 1*

115. Plaintiff incorporates and realleges each and every allegation set forth in the preceding paragraphs as if set forth here in full.

116. Defendant Geever's conduct constitutes a sexual offense as defined in Article 130 of New York Penal Law, including, but not limited to, sexual misconduct (N.Y. Penal Law § 130.20); rape (N.Y. Penal Law §§ 130.25 – 130.35); forcible touching (N.Y. Penal Law § 130.52); and/or sexual abuse (N.Y. Penal Law §§ 130.55 – 130.65).

117. As alleged herein, Defendants Hardwork and Doe 1 owed Plaintiff a duty which they breached.

118. Defendants' breach unreasonably endangered Plaintiff's physical safety and/or caused Plaintiff to fear for her own safety.

119. Defendants knew or should have known that Defendant Geever would sexually assault and/or rape Plaintiff. Defendants' conduct was outrageous and extreme.

120. The breach of Defendants' duty of care resulted in physical and emotional harm.

121. As a direct and proximate result of the foregoing acts of negligence, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

122. This action falls within the exceptions to Article 16 of the CPLR.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendants:

1. for past, present, and future general damages in an amount to be determined at trial;

2. for past, present, and future special damages, including but not limited to past, present and future lost earnings, economic damages, and others in an amount to be determined at trial;

3. any appropriate statutory damages;

4. for interest as allowed by law;

5. for civil penalties as provided by law;

6. an Order enjoining Defendant from future unlawful business practices including, but not limited to, exposing minors and vulnerable adults to sexual abuse and exploitation;

7. for any applicable costs of said suit;

8. for reasonable attorneys' fees;

9. for any appropriate punitive of exemplary damages; and

10. for such other and further relief as the Court may deem proper.

The amount of damages sought in this Complaint exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

## JURY DEMAND

Plaintiff respectfully hereby demand a trial by jury of all issues so triable.

Dated: November 22, 2023

Respectfully submitted,

*Ann Olivarius*

**MCALLISTER OLIVARIUS**
Dr Ann Olivarius KC (Hon) OBE
Dr John F.O McAllister
641 Lexington Avenue, 13th Floor
New York, NY 10022
(212) 433-3456
aolivarius@mcolaw.com
jmcallister@mcolaw.com

-and-

**KBM LAW**
Karen Barth Menzies (*pro hac vice* to be filed)
6701 Center Drive West, 1400
Los Angeles, CA 90045
(310) 363-0030
kbm@kbmlaw.com

*Attorneys for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ULSTER

**KRISTINA SARHADI**,

        Plaintiff,

- against -

**JUSTIN CATHAL GEEVER** a/k/a **JUSTIN SANE**, **HARDWORK DISTRIBUTION, INC.**, and **DOE 1**,

        Defendants.

Index No:

Summons Filed:

**SUMMONS**

**TO THE ABOVE-NAMED DEFENDANTS:**

JUSTIN CATHAL GEEVER, 8036 Thompson Run Rd, Pittsburgh, PA 15237

HARDWORK DISTRIBUTION, INC., 606 California Avenue, Pittsburgh, PA 15202

DOE 1

        **PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the Complaint, a copy of which is hereby served upon you, in this action and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a notice of appearance, on the Plaintiff's attorneys within 20 days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

        Plaintiff designates Ulster County as the place of trial. The basis of venue is that a substantial part of the events giving rise to the claim occurred in Ulster County, and it is the County in which Plaintiff resides.

Dated: November 22, 2023

**McALLISTER OLIVARIUS**

By: *Ann Olivarius*
Dr Ann Olivarius KC (Hon) OBE
Dr John F.O McAllister
641 Lexington Avenue, 13th Floor
New York, NY 10022
(212) 433-3456
aolivarius@mcolaw.com
jmcallister@mcolaw.com

-and-

**KBM LAW**
Karen Barth Menzies (*pro hac vice* to be filed)
6701 Center Drive West, 1400
Los Angeles, CA 90045
(310) 363-0030
kbm@kbmlaw.com

*Attorneys for Plaintiff*