## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF NEW YORK

**KRISTINA SARHADI**,

        Plaintiff,

- against –

**JUSTIN CATHAL GEEVER a/k/a
JUSTIN SANE, HARDWORK
DISTRIBUTION, INC., and DOE 1,**

        Defendants.

Civil Action No. 1:24-cv-00031 (GLS/CFH)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HARDWORK DISTRIBUTION, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV.P.12(b)(6)

April 22, 2024
New York, New York

**BUCHANAN INGERSOLL & ROONEY PC**

By:    /s/ Stuart P. Slotnick
       Stuart P. Slotnick, Esq.
       640 Fifth Avenue, 9th Floor
       New York, New York 10019
       T: (212) 440-4400
       F: (212) 440-4401
       E: stuart.slotnick@bipc.com

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................................... 3

BACKGROUND ................................................................................................................... 5

ARGUMENT ........................................................................................................................ 5

I.      PLAINTIFF'S CLAIMS AGAINST HARDWORK SHOULD BE
DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE
12(b)(6) ............................................................................................................... 5

           A.      Plaintiff Fails To State A Plausible Negligence Claim Against
Hardwork ................................................................................................. 7

           B.      If Plaintiff Is Claiming That Hardwork Is Responsible For
Defendant Geever's Alleged Behavior Under the Theory Of
Respondeat Superior That Claim Also Fails ............................................... 13

           C.      Plaintiff Fails To State A Plausible Claim For Negligent Infliction
of Emotional Distress Against Hardwork .................................................. 16

CONCLUSION ..................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*532 Madison Ave. Gourmet Foods v. Finlandia Ctr.*,
  96 N.Y.2d 280, 727 N.Y.S.2d 49 (N.Y. 2001) ...................................................................8

*Aaron Abadi Plaintiff, v. American Airlines, Inc., et al*
  No. 23-CV-4033 (LJL), 2024 WL 1346437 (S.D.N.Y. Mar. 29, 2024)................................16

*Adorno v. Corr. Servs. Corp.*,
  312 F.Supp.2d 505, 516-17 (S.D.N.Y. 2004) ...........................................................14

*In re Agape Litig.*,
  681 F. Supp. 2d 352 (E.D.N.Y. 2010) ....................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................5, 6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)...........................................................................5

*Barrios v. Bello*,
  No. 20 CIV. 5228 (JPC), 2021 WL 1630594 (S.D.N.Y. Apr. 27, 2021)................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................6, 15

*Benitez v. New York City Bd. of Educ.*,
  73 N.Y.2d 650 (N.Y. 1989) .........................................................................10

*Blouin v. Spitzer*,
  No. 01-CV-0925(HGM/GJD), 2001 WL 1708811 (N.D.N.Y. Nov. 8, 2001)..........................5

*Boyle v. Brewster Cent. Sch. Dist.*,
  209 A.D.3d, 175 N.Y.S.3d 343 (2d Dep't 2022) .......................................................13

*Columbo v. Philips Bryant Park LLC*,
  No. 22-CV-775 (RA), 2024 WL 1138942 (S.D.N.Y. Mar. 15, 2024)....................................17

*D'Amico v. Christie*,
  71 N.Y.2d 76, 518 N.E.2d 896 (N.Y. 1987) ...........................................................9

*De Jesus v. Sears, Roebuck & Co.*,
  87 F.3d 65 (2d Cir.1996)............................................................................6

*De Sole v. Knoedler Gallery, LLC*,
    137 F. Supp. 3d 387 (S.D.N.Y. 2015)..................................................................................13

*Di Ponzio v. Riordan*,
    89 N.Y.2d 578, 657 N.Y.S.2d 377 (1997) ...........................................................................9

*Dillon v. City of New York*,
    261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dep't 1999)...............................................................17

*Doe v. Alsaud*,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014)..............................................................................14, 15

*Doe v. Selsky*,
    663 F. Supp. 2d 213 (W.D.N.Y. 2009) .................................................................................6

*Fox v. Marshall*,
    88 A.D.3d 131, 928 N.Y.S.2d 317 (2d Dep't 2011) .............................................................9

*Francis v. Kings Park Manor, Inc.*,
    992 F.3d 67 (2d Cir. 2021)..................................................................................................16

*Galvani v. Nassau Cty. Police Indemnification Review Bd.*,
    242 A.D.2d 64, 674 N.Y.S.2d 690 (2d Dep't 1998) ...........................................................14

*Green v. City of Mount Vernon*,
    96 F. Supp. 3d 263 (S.D.N.Y. 2015)...................................................................................17

*Harper v. United States*,
    949 F.Supp. 130 (E.D.N.Y.1996) .........................................................................................9

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2007)....................................................................................................6

*Haymon v. Pettit*,
    9 NY3d 324 (N.Y. 2007) .....................................................................................................10

*J.E. v. Beth Israel Hosp.*,
    295 A.D.2d 281 (1st Dep't 2002) ..........................................................................................7

*Kimmel v. Schaefer*,
    675 N.E.2d 450 (N.Y. 1996)..................................................................................................7

*Kraft v. City of New York*,
    696 F. Supp. 2d 403 (S.D.N.Y. 2010), *aff'd, 441 F. App'x* 24 (2d Cir. 2011) ........................17

*Kush v. City of Buffalo*,
    59 N.Y.2d 26, 462 N.Y.S.2d 831 (N.Y. 1983) ....................................................................10

*Lauer v. City of New York*,
  95 N.Y.2d 95, 711 N.Y.S.2d 112, 733 N.E.2d 184 (2000)................................11, 17

*Luina v. Katharine Gibbs Sch. N.Y., Inc.*,
  37 A.D.3d 555, 830 N.Y.S.2d 263 (2007) ...............................................................10

*Mortise v. United States*,
  102 F.3d 693 (2d Cir. 1996)..............................................................................16, 17

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
  261 F.R.D. 13 (S.D.N.Y. 2009) .................................................................................8

*N.X. v. Cabrini Med. Ctr.*,
  97 N.Y.2d 247 (NY 2002) ......................................................................................14

*Palsgraf v. Long Island R.R. Co.*,
  248 N.Y. 339, 162 N.E. 99 (1928) ............................................................................9

*Patane v. Clark*,
  508 F.3d 106 (2d Cir. 2007)......................................................................................5

*Pratt v. Robinson*,
  39 N.Y.2d 554, 384 N.Y.S.2d 749 (N.Y. 1976) ......................................................13

*Pulka v. Edelman*,
  40 N.Y.2d 781, 358 N.E.2d 1019 (N.Y. 1976).........................................................9

*Read v. Cornning Inc.*,
  371 F. Supp.3d 87 (W.D.N.Y. 2019) ......................................................................12

*Saint–Guillen v. United States*,
  657 F.Supp.2d 376 (E.D.N.Y. 2009) .........................................................................8

*Schneider v. Kings Highway Hospital Center, Inc.*,
  67 N.Y.2d 743, 500 N.Y.S.2d 95 (N.Y. 1986) .........................................................7

*Sclafani v. PC Richard & Son*,
  668 F.Supp.2d 423 (E.D.N.Y. 2009) ......................................................................15

*Church ex rel. Smith v. Callanan Indus., Inc.*,
  782 N.E.2d 50 (N.Y. 2002)........................................................................................8

*Sokola v. Weinstein*,
  78 Misc. 3d 842, 187 N.Y.S.3d 493, *appeal withdrawn*, 219 A.D.3d 1185, 194
  N.Y.S.3d 474 (2023)..............................................................................................2, 8

*Steinberg v. New York City Transit Auth.*,
   28 Misc. 3d 1237(A), 958 N.Y.S.2d 63 (Sup. Ct. 2010), *aff'd*, 88 A.D.3d 582,
   931 N.Y.S.2d 291 (2011) ................................................................................................10

*Taggart v. Costabile*,
   131 A.D.3d 243, 14 N.Y.S.3d 388 (2015) .............................................................16, 18

*Talbot v. N.Y. Inst. of Tech.*,
   225 A.D.2d 611, 639 N.Y.S.2d 135 (1996) ...............................................................10

*Tassy v. Brunswick Hosp. Center, Inc.*,
   296 F.3d 65 (2d Cir. 2002) ...........................................................................................5

*Truman v. Brown*,
   434 F. Supp. 3d 100 (S.D.N.Y. 2020) ........................................................................16

*Van Nostrand v. Froehlich*,
   44 A.D.3d 54, 844 N.Y.S.2d 293 (2007) ....................................................................10

*VFP Investments I LLC v. Foot Locker, Inc.*,
   26 N.Y.S.3d 727 (N.Y. Sup. Ct. 2015), *aff'd*, 48 N.Y.S.3d 27 (1st Dep't 2017) ...................15

## Court Rules

Fed. R. Civ. P. 8(a)(2) ......................................................................................................6

Fed. R. Civ.P.12(b)(6) ................................................................................................1, 5, 6

v

The facts as presented by Plaintiff in the First Amended Complaint ("FAC") are that Plaintiff, a college graduate, met Defendant Geever at an Anti-Flag concert in Brooklyn, New York where he was performing with the band Anti-Flag. (FAC ¶ 62.) At some point that evening Defendant Geever invited Plaintiff to a film festival and a Geever solo concert (*i.e.* a concert that the other members of Anti-Flag were neither performing at nor attending) that was to take place a week and a half later.  (FAC ¶ 66.)  After having no contact with Defendant Geever for 9 days, Plaintiff on her own travelled to the film festival in Rosendale, New York. (FAC ¶ 69.)  Defendant Geever did not show up to meet Plaintiff and did not let Plaintiff into the film festival, as Plaintiff had expected him to do, and she missed the screening. (FAC ¶ 70.)   Regardless, Plaintiff waited for Defendant Geever and met him after the film festival. (FAC ¶ 71.)   Plaintiff and Defendant Geever travelled together to Woodstock, New York to attend a Geever solo acoustic performance. (*Id.*)   After Defendant Geever's solo performance concluded, Plaintiff agreed to join Plaintiff at an "afterparty" being held in a private house. (FAC ¶ 72.)  Plaintiff drove herself and Defendant Geever to the afterparty and despite being "bored and annoyed" with Defendant Geever's braggard behavior, Plaintiff agreed to go with Defendant Geever to his motel. (FAC ¶¶ 73, 75, 77.)   Once at the motel, Defendant Geever and Plaintiff went to a bar where Geever ordered beers and shots of alcohol.  (FAC ¶ 80.)  While it is unclear from the complaint if Plaintiff drank with Defendant Geever, the FAC alleges that Geever drank and danced in the bar while Plaintiff waited for him. (FAC ¶ 81.)   Plaintiff then went with Defendant Geever to his motel room hoping to listen to music with him, the parties engaged in sexual relations that Plaintiff did not consent to. (FAC ¶¶ 82, 90.)

Based on these alleged facts, Plaintiff now seeks to create a duty owed to Plaintiff from Hardwork Distribution, Inc. ("Hardwork") (a corporate entity that according to vague allegations

in the FAC "benefits financially from the band's [Anti-Flag] activity" (FAC ¶ 47))[1].   However, Plaintiff's own allegations are at odds with her claims against Hardwork.  Plaintiff does not (and cannot) allege that Hardwork or any of the other members of Anti-Flag were present at the film festival, the afterparty, the bar, the motel or even in Rosendale or Woodstock New York during the events she describes.   Indeed, Plaintiff admits she voluntarily sought out the company of Defendant Geever more than a week after meeting him at an Anti-Flag concert.  Plaintiff's attempts to pin liability on Hardwork in relation to Defendant Geever's behavior at a time he was not performing with or even travelling with Anti-Flag, via unsupported, vague, allegations that appears to suggest that Hardwork had a responsibility to prevent Defendant Geever from interacting with Plaintiff.  This fabricated duty is not supported by any reasonable legal theory and should not be countenanced by this Court.  Tellingly, Plaintiff cannot point to *any* legal duty that flowed from Hardwork to her in relation to the circumstances set forth in the FAC, even one that would have existed *if* Defendant Geever's solo performance was an Anti-Flag performance and/or the other members of the band were in Woodstock when Plaintiff was allegedly attacked.

Loath to speak out in any way against a survivor of sexual assault, Defendant Geever's former bandmates have silently endured having their names dragged through the mud as Plaintiff engaged in a publicity campaign focused on conjecture and unsupported allegations.[2]  However,

---

[1]     Plaintiff also generally alleges that the Remaining Members (Head, Barker, Thetic) are officers of Hardwork (¶ 20), however, New York law is clear that "[a] corporate officer is not held liable for the negligence of the corporation merely because of his official relationship to it. It must be shown that the officer was a participant in the wrongful conduct" *Sokola v. Weinstein*, 78 Misc. 3d 842, 848, 187 N.Y.S.3d 493, 501 (1st Dep't), appeal withdrawn, 219 A.D.3d 1185, 194 N.Y.S.3d 474 (2023) (collecting cases).

[2]     Plaintiff's decision to pepper the FAC with statements such as "Any sexual encounter between Geever and an underage girl lacks consent and, accordingly, is deemed rape. This rape is a form of sexual violence" (FAC ¶ 97) where there are no allegations that Plaintiff was underage at the time of the alleged assault is but one example of Plaintiff's continuous courting of media exposure by including unnecessary, unsupported and unduly prejudicial allegations in the FAC.

any fact and legal based evaluation of the FAC highlights the fact that Plaintiff lacks any good faith basis for making claims against Hardwork and all claims against Hardwork should be dismissed with prejudice for failure to state a claim.

## PRELIMINARY STATEMENT

The accusations set forth by Plaintiff, taken as true for the purposes of a motion to dismiss, are difficult to read, and describe a disturbing and traumatizing event. The behavior attributed to Defendant Geever is criminal. However, Plaintiff's reliance on speculation, conjecture and unsubstantiated allusions to a sea of underage fans being "groomed" at Anti-Flag concerts does not change the fact that Plaintiff has failed to (and cannot) state a legal claim against Hardwork. Defendant Geever's failure to respond to the FAC and his alleged escape from the Court's jurisdiction does not mean that the remaining former members of Anti-Flag or Hardwork can or should be held responsible for Defendant Geever's alleged behavior.  Plaintiff's vague and unsupported allusions to various "incidents" and unnamed witnesses is an insufficient basis to create a legal duty where none exists.  Plaintiff relies on innuendo and conclusory allegations made upon information and belief to suggest that the remaining former members of Anti-Flag knew about Defenant Geever's alleged proclivity to engage in illegal sexual relations with fans of Anti-Flag.  However, there is no actual evidence that the remaining former members were aware of any accusations relating to Defendant Geever.  Regardless, even if the remaining band members knew that Defendant Geever had sexual relations with fans (they did not) there would still be no legal duty for Hardwork to (as Plaintiff seemingly suggests) block Defendant Geever from having any contact with fans of Anti-Flag.  No such duty exists under the law.  Ignoring facts, the FAC instead relies on the emotional and salacious nature of Plaintiff's allegations to unjustly slander Barker, Head and Bollinger (the "Remaining Former Members") without any evidence that any one of them *actually* knew about Defendant Geever's alleged behavior.  That is, the FAC is rife with

conclusory accusations based upon information and belief that the Remaining Former Members "must have known" and that they "aided and abetted" Defendant Geever, but fails to point to a single shred of actual evidence that the Remaining Former Members knew or reasonably should have known about Defendant Geever's alleged criminal assaults and alleged propensity to commit more.  In fact, contrary to Plaintiff's attempt to paint the band's immediate dissolution once allegations against Defendant Geever came to light as evidence "the band had been fearing and preparing for exposure of Geever's sexual misconduct" (FAC ¶ 16), the Remaining Former Members' disbanding of Anti-Flag was actually a reaction to the shock and horror they felt at the allegations against their former band-member.

Indeed, a review of the FAC's allegations makes clear that Plaintiff is asking the Court to rely on conjecture, speculation and unsupported allegations to keep Hardwork in this action.  The Court should dismiss Plaintiff's causes of action against Hardwork for failure to state viable claims of negligence, and negligent infliction of emotional distress.

As a matter law, Plaintiff cannot point to any duty that Hardwork had to Plaintiff in relation to an alleged sexual assault by Geever in Rosendale or Woodstock, New York on October 1, 2010 (FAC ¶ 69) a day when Anti-Flag was not performing in either Woodstock or Rosendale, New York and no member of Anti-Flag other than Defendant Geever was in Rosendale and Woodstock, New York.  The FAC, attempts to gloss over this fact by stating that "Geever's performance was scheduled after the screening" (FAC ¶ 66), but Plaintiff later admits that Geever performed solo in Woodstock, New York. (FAC ¶ 71.)  That is, Plaintiff bases her allegations of negligence and negligent infliction of emotional distress against Hardwork in relation to an alleged event that she admits took place nine (9) days after the Anti-Flag concert she attended and after she, of her own volition, accepted an invitation from Defendant Geever to attend a film festival and again of her

volition chose to drive with Defendant Geever to a solo concert in another city, to an after-party, to a bar located in a motel Defendant Geever was staying at and then chose to accept Geever's invitation to join him in his motel room.  While Plaintiff's description of Defendant Geever's alleged behavior and its impact on her is extremely troubling, Plaintiff does not (and cannot) plausibly allege that Hardwork owed her a duty in relation to these events.  Because Plaintiff cannot plausibly allege that Hardwork breached a duty that it had to her, Plaintiff's negligence and negligent infliction of emotional distress claims cannot proceed as a matter of law.

## BACKGROUND

Solely for purposes of the pending Motion to Dismiss and because the Court must accept all allegations in the FAC as true, Defendant Hardwork does not, at this juncture, dispute the well-pled factual allegations set forth in the FAC.  *See Tassy v. Brunswick Hosp. Center, Inc*., 296 F.3d 65, 67 (2d Cir. 2002).

## ARGUMENT

### I.   PLAINTIFF'S CLAIMS AGAINST HARDWORK SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all *reasonable* inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also Blouin v. Spitzer,* No. 01-CV-0925(HGM/GJD), 2001 WL 1708811, at *2 (N.D.N.Y. Nov. 8, 2001) (noting that a "complaint which consists of conclusory allegations unsupported by factual assertions fails even

the liberal standard of Rule 12(b)(6)" *citing De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir.1996)).

Here, Plaintiff's claims against Hardwork do not satisfy the pleading standard of Fed. R. Civ. P. 8(a)(2) by "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Plaintiff's claims lack "facial plausibility" because Plaintiff failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556)); *see also, Barrios v. Bello,* No. 20 CIV. 5228 (JPC), 2021 WL 1630594, at *2 (S.D.N.Y. Apr. 27, 2021) ("Plausibility depends on whether the "ple[d] factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" citing *Twombly* at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint has alleged—but it has not 'show[n]' —that the pleader is entitled to relief." *Id.* at 679 (emphasis added) (citations omitted); *see also, Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2007) (presumption of truth as to allegations in complaint does not apply to legal conclusions and threadbare recitation of the elements of a cause of action, supported by mere conclusory statements) (citations omitted).

The plausibility standard is intended to avoid the "potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence to support [the plaintiff's] claim." *Twombly*, 550 U.S. at 559-60 (internal quotations omitted). Plaintiff's "obligation . . . require[s] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Doe v. Selsky*, 663 F. Supp. 2d 213, 214 (W.D.N.Y. 2009) (citations omitted). Because Plaintiff fails to state any plausible causes of action as against Hardwork, the Court should dismiss Plaintiff's claims against Hardwork.

### A.     Plaintiff Fails To State A Plausible Negligence Claim Against Hardwork

Plaintiff alleges that Hardwork breached various duties owed to Plaintiff, including to "protect her from harm [because] it was in a position to control Geever's access to young women [and] it invited Sarhadi onto the premises and facilities."[3] (FAC ¶¶ 137-139.)  Plaintiff also alleges that Hardwork had a duty starting at some unspecified point in the past and continuing into the present to "enact policies and procedures" to keep Geever from using "power, influences, status and facilities" to "access and sexually assault women". (FAC ¶ 142.)  But Plaintiff fails to allege facts that would establish that Hardwork had or has, much less breached, any such duty to Plaintiff.

It is axiomatic that liability for negligence may result only from a claimed breach of some duty running between the tortfeasor and the injured party. *Kimmel v. Schaefer*, 675 N.E.2d 450, 453 (N.Y. 1996); *In re Agape Litig.*, 681 F. Supp. 2d 352, 359 (E.D.N.Y. 2010) ("the threshold question in any negligence action is whether the defendant owes the plaintiff a duty of care") (citations omitted).   "To establish a claim of negligence that is based, as here, entirely on circumstantial evidence, a plaintiff must demonstrate the existence of "facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred." *J.E. v. Beth Israel Hosp.*, 295 A.D.2d 281, 283, (1st Dep't 2002) citing *Schneider v. Kings Highway Hospital Center, Inc.*, 67 N.Y.2d 743, 744, 500 N.Y.S.2d 95, 490 N.E.2d 1221 (N.Y. 1986)).

Importantly, the question of what duty, if any, Hardwork owed to Plaintiff is a legal question and therefore, the Court must look to the law, not the FAC, to define this duty.  *See*

---

[3]     Plaintiff conspicuously glosses over the fact that earlier in the FAC she admitted that the alleged assault did <u>not</u> take place on the premises of an Anti-Flag concert or even on the same day as an Anti-Flag concert.  It is unclear what "premises" Plaintiff alleges Hardwork "invited" her onto in relation to the alleged assault.

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.,* 261 F.R.D. 13, 27 (S.D.N.Y. 2009), *(*citing *Purdy v. Public Adm'r of Westchester,* 72 N.Y.2d 1, 8, 530 N.Y.S.2d 513 (N.Y. 1988)), *aff'd sub nom. Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A.,* 382 F. App'x 107 (2d Cir. 2010) (issue of whether a duty of care is owed by defendant to plaintiff is a question of law that the Court may properly determine on a motion to dismiss); *Church ex rel. Smith v. Callanan Indus., Inc.*, 782 N.E.2d 50 (N.Y. 2002) ("The existence and scope of a duty of care is a question of law for the courts entailing the consideration of relevant policy factors."). In New York, "[a]n action to recover for negligence does not lie unless there exists a duty on the part of the defendant and a corresponding right in the plaintiff." *Saint–Guillen v. United States*, 657 F.Supp.2d 376, 383 (E.D.N.Y. 2009). "The question of whether a member or group of society owes a duty of care to reasonably avoid injury to another is of course a question of law for the courts." *Id*. (citation omitted).

Courts traditionally "fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." *532 Madison Ave. Gourmet Foods v. Finlandia Ctr.*, 96 N.Y.2d 280, 288, 727 N.Y.S.2d 49 (N.Y. 2001) (citations omitted). The scope of an actor's duty to a plaintiff depends on the relationship of the parties, whether the plaintiff was within the zone of foreseeable harm, and whether the harm (the accident) was within the class of reasonably foreseeable hazards that the duty exists to prevent. And there is generally no duty to control the harm-producing conduct of a third party (*i.e.*, the tortfeasor) absent a special relationship either between the defendant and the plaintiff or the defendant and the tortfeasor. *Sokola v. Weinstein*, 78 Misc. 3d 842, 845–46, 187 N.Y.S.3d 493, 499 (1st Dep't 2023),

appeal withdrawn, 219 A.D.3d 1185, 194 N.Y.S.3d 474 (2023) citing *Pulka v. Edelman*, 40 N.Y.2d 781, 783, 358 N.E.2d 1019, 1021 (N.Y. 1976); *D'Amico v. Christie*, 71 N.Y.2d 76, 88, 518 N.E.2d 896, 901 (N.Y. 1987) (holding that employer who fired an inebriated employee and ordered him off the work site did not owe a duty to users of the public highways who may later be injured by him because a "defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control"); *Di Ponzio v. Riordan,* 89 N.Y.2d 578, 583, 657 N.Y.S.2d 377 (1997) (where gas station customer was injured when motorist left his unattended vehicle with engine running and the vehicle rolled forward and pinned plaintiff, gas station did not breach legally cognizable duty, as (1) risk that vehicle unattended with engine running would roll forward after parking gear failed was not among hazards associated with leaving vehicle running, and (2) owners could not be held vicariously liable for negligence of motorist  (citations omitted)); *see also Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 344-45, 162 N.E. 99 (1928) (Cardozo, J.) (It is an elementary tenet of New York law that "[t]he risk reasonably to be perceived defines the duty to be obeyed"). Although foreseeability generally is for the factfinder to resolve, courts may dismiss cases where the risks are unforeseeable as a matter of law.  *Id*.

Additionally, to prove a prima facie case of negligence, a plaintiff must not only demonstrate the existence of a duty, but also "a breach of that duty, and that the breach of such duty was a proximate cause of his or her injuries."  *Fox v. Marshall*, 88 A.D.3d 131, 928 N.Y.S.2d 317, 320 (2d Dep't 2011). "Negligence is conduct that falls beneath the standard of care which would be exercised by a reasonably prudent person in similar circumstances at the time of the conduct at issue."  *Harper v. United States*, 949 F.Supp. 130, 132 (E.D.N.Y.1996).  Thus, a plaintiff must establish the following elements to prove negligence: (1) the defendant owed a duty

of care to the plaintiff; (2) the defendant breached that duty; (3) the defendant's breach was a proximate cause of the plaintiff's injuries; and (4) the plaintiff was damaged. *See, e.g., Van Nostrand v. Froehlich*, 44 A.D.3d 54, 844 N.Y.S.2d 293, 293 (2007); *Luina v. Katharine Gibbs Sch. N.Y., Inc.*, 37 A.D.3d 555, 830 N.Y.S.2d 263, 263 (2007); *Talbot v. N.Y. Inst. of Tech.*, 225 A.D.2d 611, 639 N.Y.S.2d 135, 135 (1996).

Here, Plaintiff fails to (and cannot) point to any duty that Hardwork owed to her on the evening Defendant Geever allegedly assaulted her after she met him at an Anti-Flag concert 9 days prior. Indeed, Plaintiff concedes that of her own volition: she chose to accept an invitation from Defendant Geever to attend a film festival a week after the Anti-Flag concert, she travelled with Defendant Geever to his solo concert in another town, she decided to join Defendant Geever at an after-party and drove them both there, she agreed to join Defendant Geever for drinks at a bar, and finally she decided to accept Defendant Geever's invitation to join him at his motel room. (FAC ¶¶ 66-82.) The intervening independent acts of Defendant Geever (and Plaintiff) render Defendant Geever's liability as the sole and only proximate cause of Plaintiff's alleged injury.[4]

Plaintiff does not and cannot point to any relationship between her and Hardwork or any legal duty that Hardwork owed to her more than a week after she attended an Anti-Flag concert.

---

[4]       Notably, "[a]n intervening act will be deemed a superseding cause and will serve to relieve defendant of liability when the act is of such an extraordinary nature or so attenuates defendant's negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant." *Kush v. City of Buffalo*, 59 N.Y.2d 26, 33, 462 N.Y.S.2d 831 (N.Y. 1983) (collecting cases); *Benitez v. New York City Bd. of Educ.*, 73 N.Y.2d 650, 659 (N.Y. 1989) ("while issues of proximate cause are generally fact matters to be resolved by a jury, "where only one conclusion may be drawn from the established facts the question of legal cause may be decided as a matter of law") (citations omitted); *Steinberg v. New York City Transit Auth.*, 28 Misc. 3d 1237(A), 958 N.Y.S.2d 63 (Sup. Ct. 2010), *aff'd*, 88 A.D.3d 582, 931 N.Y.S.2d 291 (2011) (noting that where there is no legal duty established a court will not reach the question of causation, "If [corporate defendant] owed a duty to [plaintiff], then, given the duty owed under the circumstances, one must consider whether [third-party's] assault constituted a superseding or intervening act. Plaintiffs′ argument that foreseeability should be a factual issue *is flawed to the extent that it presupposes that a duty exists*" (emphasis added) citing *Haymon v. Pettit*, 9 NY3d 324 (N.Y. 2007).

Finding the contrary would create a duty requiring Hardwork to either sequester Defendant Geever from all Anti-Flag fans for hundreds or thousands of shows performed over decades or police every moment of Defendant Geever's life when not at an Anti-Flag concert.  It is unclear, in any event, how Hardwork would have any duty to Plaintiff even if the alleged sexual assault happened immediately after an Anti-Flag concert, which it did not.

In the same vein, Plaintiff fails to point to a duty Hardwork owed her (or breached) during the actual Anti-Flag concert that occurred a week prior. That is, aside from wholly conclusory and threadbare allegations, which must be disregarded, Plaintiff has not alleged any facts to support a claim that Hardwork breached a duty to Plaintiff when it "allowed" Geever to "lock[ ] eyes with Sarhadi and [engage in] singing to and winking at her [ ]"  or when Geever "in front of the other band members, [  ] jumped off the stage, hugged Sarhadi, and asked her her name and where she was from". (FAC ¶¶ 63, 64.)  "[W]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *Lauer v. City of New York,* 95 N.Y.2d 95, 100, 711 N.Y.S.2d 112, 733 N.E.2d 184 (2000) (finding a lack of duty and dismissing claim where father sued city in connection with medical examiner's failure to correct erroneous autopsy report on three-year-old child that led to homicide investigation against father and noting that particularly when faced with "sympathetic facts" courts must be mindful of the precedential, and consequential, future effects of their rulings, and "limit the legal consequences of wrongs to a controllable degree").

Even if Hardwork had a duty to Plaintiff to somehow keep Defendant Geever from allegedly assaulting her, Plaintiff fails to (and cannot) allege sufficient facts to establish that Hardwork breached that duty.  Drawing all inferences in Plaintiff's favor and assuming, *arguendo*, that all the allegations set forth in Plaintiff's FAC are true, the FAC alleges (at most) that Hardwork

knew that Defendant Geever traded on his "rock-star persona" to attract sexual partners. Plaintiff sprinkles the FAC with vague allegations that Hardwork "knew or should have known" that Defendant Geever allegedly engaged in some predatory behavior towards women, but absent any allegation that Hardwork knew or should have known that Defendant Geever and Plaintiff, two of-age independent adults, would meet a week after the Anti-Flag concert and Defendant Geever would allegedly sexually assault Plaintiff, Plaintiff has no viable negligence claim against Hardwork. Plaintiff's threadbare conclusory allegations that the other members of Anti-Flag and/or Hardwork "must have known" are simply insufficient to support her claims.[5] The FAC urges the Court to infer Hardwork's purported knowledge despite the complete absence of specific factual allegations concerning any wrongdoing by Defendant Geever, but Plaintiff's conclusory allegations are insufficient to create a plausible inference that Hardwork (or the other band members) had any knowledge, actual or constructive, about Defendant Geever's alleged behavior (they did not). *See Read v. Cornning Inc.*, 371 F. Supp.3d 87, 92 (W.D.N.Y. 2019) ("[w]here a defendant's knowledge of some fact or circumstance is an element of a tort claim, a bare assertion that a defendant 'knew or should have known' of that fact or circumstance is insufficient to state a claim"). The allegations that Plaintiff met Defendant Geever at an Anti-Flag concert and/or that she was a fan of Anti-Flag for many years do not create a legal duty where none exists. There appears to be no New York case law regarding a tort related legal duty that a band owes to its fans away from a concert premises, however, comparing the claims here to claims made by underage

---

[5]    In the same vein, Plaintiff's hearsay reports that alleged prior victim(s) of Geever spoke to the other band members (FAC ¶¶ 52, 57) fail to include any verifiable details and cannot support Plaintiff's claims. Indeed, the notion that other members of Anti-Flag, venue staff and producers were aware of the "sheer scale of Geever's misconduct" (FAC ¶ 57) is belied by the fact that according to Plaintiff, Geever and Anti-Flag performed together for over 36 years (FAC ¶¶ 38-47), and yet Plaintiff cannot point to a single police report, complaint, or claim filed before she filed the instant action. Plaintiff's reliance on a Rolling Stone article and vague claims about what an unidentified "witness" saw are legally insufficient and problematic.

students against schools may be instructive.  *See, e.g., Boyle v. Brewster Cent. Sch. Dist.,* 209 A.D.3d at 620, 175 N.Y.S.3d 343 (2d Dep't 2022) (noting that schools are not insurers of the safety of their students, and the duty they owe to their students derives from their physical custody and control over the students and holding that defendants established their prima facie entitlement to judgment as a matter of law by demonstrating that they did not assume a separate special duty of care to protect the decedent and guard against him committing suicide); *Pratt v. Robinson*, 39 N.Y.2d 554, 560, 384 N.Y.S.2d 749 (N.Y. 1976) (A school's custodial duty ceases once the student has passed out of its orbit of authority).

At its core, the FAC rests on an impractical and legally unsupported construct that suggests that Hardwork had a duty to prevent Defendant Geever from meeting any female fan of Anti-Flag or if such a meeting were to occur, then Hardwork had a duty to prevent Defendant Geever from having any subsequent meeting with any fan for fear that they would be sexually assaulted by Defendant Geever.  This fabricated and unsupported legal duty Plaintiff seeks to impose upon Hardwork, to fans of Anti-Flag is patently absurd.

### B.    If Plaintiff Is Claiming That Hardwork Is Responsible For Defendant Geever's Alleged Behavior Under the Theory Of *Respondeat Superior* That Claim Also Fails

To the extent Plaintiff seeks to state a negligence claim against Hardwork because Hardwork is liable for Defenant Geever's alleged misconduct under the *respondeat superior* theory, that claim also fails. To state a claim for *respondeat superior*, a plaintiff must plead facts showing, among other things, that an employer-employee, agency or similar relationship exists between the parties and the alleged wrongdoing causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests. *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 417 (S.D.N.Y. 2015) (To state a claim under the New York common law doctrine of *respondeat superior* "a plaintiff must plead facts

showing, among other things, that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests") (citations omitted). "An employer will not be held liable under [the doctrine of *respondeat superior*] for actions which were not taken in furtherance of the employer's interest and which were undertaken by the employee for wholly personal motives." *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014) (quoting *Galvani v. Nassau Cty. Police Indemnification Review Bd*., 242 A.D.2d 64, 68, 674 N.Y.S.2d 690 (2d Dep't 1998), collecting cases and noting that "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context") (citations omitted) (emphasis added)); *see also*, *Adorno v. Corr. Servs. Corp*., 312 F.Supp.2d 505, 516-17 (S.D.N.Y. 2004) ("New York courts have repeatedly found no vicarious liability for claims involving sexual misconduct, including sexual assault.") (collecting cases); *N.X. v. Cabrini Med. Ctr*., 97 N.Y.2d 247, 251 (NY 2002) (holding that "[a] sexual assault perpetrated by a hospital employee is not in furtherance of hospital business and is a clear departure from the scope of employment, having been committed for wholly personal motives" and therefore could not form basis for recovery under doctrine of *respondeat superior*, but noting that a fact issue existed as to whether nurses who were present at time of assault failed to adequately protect patient).

Plaintiff fails to sufficiently allege that Hardwork and Defendant Geever were in an employer-employee, agency or similar relationship. However, assuming *arguendo*, that such a relationship existed, Plaintiff fails to (and cannot) offer any support for the notion that Defendant Geever allegedly engaging in sexual assault in any way, shape or form furthered Hardwork's business interests. That is, Plaintiff does not and cannot adequately allege that Defendant Geever's

duties as Hardwork's employee or agent involved sexual violence and therefore Plaintiff's *respondeat superior* claims must fail.  *See, e.g., Doe v. Alsaud*, 12 F. Supp. 3d 674, 678 (S.D.N.Y. 2014) (noting that conclusory allegations in a complaint that employer "knew or should have known of defendant's predisposition to abusing women, his violent propensities and his sexual harassment of women" were not sufficient to meet the *Twombly* standard);  *Sclafani v. PC Richard & Son,* 668 F.Supp.2d 423, 447–48 (E.D.N.Y. 2009) ("If plaintiff's facts are credited, a rational jury could find that [defendant's] assault was reasonably foreseeable, but a rational jury could not find that the assault was within the scope of [defendant's] employment at [employer company]. Although the assault occurred in the [employer company] parking lot before work, the assault in no way furthered [employer company]'s business" and holding that where plaintiff could not demonstrate that assault was within the scope of party's employment, employer could not be held liable under a *respondeat superior* theory).

The U.S. Supreme Court has made clear that allegations that do no more than recite the elements of a successful claim do not satisfy Rule 8(a). "[A] plaintiff's obligation to provide the 'grounds' of [his or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007) (citations omitted); *see also VFP Investments I LLC v. Foot Locker, Inc.,* 26 N.Y.S.3d 727 (N.Y. Sup. Ct. 2015), *aff'd*, 48 N.Y.S.3d 27 (1st Dep't 2017) (dismissing complaint because it lacked factual allegations to support the "conclusory statements … that [the employees' conduct at issue was] within the scope of their employment"). Here, no facts are plead that could sustain the conclusion that anything Defendant Geever allegedly did to Plaintiff was within the scope of his relationship with Hardwork or furthered Hardwork's interests. All claims suggesting the

15

liability of Hardwork under the doctrine of *respondeat superior* fail the required pleadings test and should be dismissed with prejudice.

   **C.   Plaintiff Fails To State A Plausible Claim For Negligent Infliction of Emotional Distress Against Hardwork**

In New York, a plaintiff may establish negligent infliction of emotional distress through the assertion of a "bystander" theory or a "direct duty theory." *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). To assert a bystander theory, a plaintiff must claim that "(1) she is threatened with physical harm as a result of defendant's negligence; and (2) consequently she suffers emotional injury from witnessing the death or serious bodily injury of a member of her immediate family" which Plaintiff does not plead. *Id.*

To assert a direct duty theory, "a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc*., 992 F.3d 67, 81 (2d Cir. 2021); *see also, Aaron Abadi Plaintiff, v. American Airlines, Inc., et al* No. 23-CV-4033 (LJL), 2024 WL 1346437, at *44 (S.D.N.Y. Mar. 29, 2024) (a New York based claim for negligent infliction of emotional distress must be premised upon a breach of a duty owed directly to the plaintiff which either unreasonably endangers a plaintiff's physical safety or causes the plaintiff to fear for his or her own safety) (citations omitted). While extreme and outrageous conduct is not an element of negligent infliction of emotional distress claims <u>there must be a breach of a duty of care</u>.[6] *Taggart v. Costabile*, 131 A.D.3d 243, 255, 14 N.Y.S.3d 388, 398 (2015).

---

[6]    Notably, some Federal Courts *do* require that a negligent infliction of emotional distress claim be supported by outrageous conduct. *See, e.g., Truman v. Brown*, 434 F. Supp. 3d 100, 122 (S.D.N.Y. 2020)  ("[u]nder New York law, a plaintiff alleging NIED must show "(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3)

Here, Plaintiff alleges that she suffered emotional harm such as panic attacks and post-traumatic stress disorder, however she fails to allege that Hardwork breached any particular duty connected to the harm she suffered. "The duty in such cases must be specific to the plaintiff, and not some amorphous free-floating duty to society." *Columbo v. Philips Bryant Park LLC*, No. 22-CV-775 (RA), 2024 WL 1138942, at *20 (S.D.N.Y. Mar. 15, 2024) (citing *Mortise*, 102 F.3d at 696); *see also, Lauer v. City of New York,* 95 N.Y.2d 95, 100, 711 N.Y.S.2d 112 (N.Y. 2000) (declining to find that a coroner owed a "specific duty" to the parents of a dead child where the coroner erroneously listed a child's cause of death a homicide, destroying the parents' marriage and causing substantial emotional harm); *Kraft v. City of New York,* 696 F. Supp. 2d 403, 424 (S.D.N.Y. 2010) ("[W]hile police defendants may owe a general duty to the public, they did not owe any specific duty to [the] plaintiff" when they incorrectly transported him to a mental hospital), *aff'd, 441 F. App'x* 24 (2d Cir. 2011). Because Plaintiff cannot allege a legally cognizable duty that flows from Hardwork to her, Plaintiff's NIED claim fails.

Additionally, Sarhadi's independent decisions (i) to travel to meet Defendant Geever at a film festival more than a week after the Anti-Flag concert where she met him, (ii) wait for Defendant Geever after he failed to let her into the film festival (iii) travel with Defendant Geever to a solo performance in another town, (iv) drive herself and Defendant Geever to an after-party in a private house, (v) drive with Defendant Geever to his hotel bar, and (vi) accept Defendant Geever's invitation to join him in his motel room are separate actions that sever any casual connection between any alleged conduct or omission by Hardwork and Plaintiff's injury. *See, e.g.,*

---

severe emotional distress [and] New York courts use the same standard in evaluating extreme and outrageous conduct in both IIED and NIED claims" citing *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015) and *Dillon v. City of New York*, 261 A.D.2d 34, 704 N.Y.S.2d 1, 7 (1st Dep't 1999).

*Taggart v. Costabile*, 131 A.D.3d 243, 256, 14 N.Y.S.3d 388, 399 (2d Dep't 2015) (Homeowners who, after complaining to police about neighboring landowners' tenants hosting large parties that involved open use and sale of illegal drugs, had two of tenants' guests break into their home and threaten them could not state claim against neighboring landowners for negligent infliction of emotional distress; even if neighboring landowners breached statutory duty to prohibit tenants from utilizing property for unlawful trade or business; criminal actions of tenants' guests were not the normal and foreseeable consequences of such a breach, but were intervening and superseding cause of homeowners' mental injuries).

## **CONCLUSION**

For the reasons set forth above Defendant Hardwork Distribution, Inc. respectfully requests that the claims against it as set forth in Plaintiff's FAC be dismissed with prejudice.

Dated: New York, New York
         April 22, 2024

                                        **BUCHANAN INGERSOLL & ROONEY PC**

                                        By:      /s/ Stuart P. Slotnick
                                                 Stuart P. Slotnick, Esq.
                                                 640 Fifth Avenue, 9th Floor
                                                 New York, New York 10019
                                                 T: (212) 440-4400
                                                 F: (212) 440-4401
                                                 E: stuart.slotnick@bipc.com