UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KRISTINA SARHADI,** | |
| Plaintiff, | Civil Action No. 1:24-cv-00031(BKS/CFH) |
| - against - | |
| **JUSTIN CATHAL GEEVER a/k/a JUSTIN SANE**, and **HARDWORK DISTRIBUTION, INC.**, and **DOE 1** | |
| Defendants | |

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HARDWORK
DISTRIBUTION, INC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR FAILURE TO STATE A CLAIM
PURSUANT TO FED. R. CIV. P. 12(b)(6)

**McALLISTER OLIVARIUS**
John F.O. McAllister
641 Lexington Avenue
13th Floor
New York, NY 10022
Telephone: (212) 433-3456
jmcallister@mcolaw.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................III

PRELIMINARY STATEMENT.....................................................................1

PROCEDURAL HISTORY .............................................................................2

ARGUMENT ......................................................................................................3

   I.     Legal Standard ..................................................................................3

   II.    Hardwork's Motion to Dismiss is Moot.....................................4

   III.   Plaintiff's States A Claim For Negligent Supervision and Retention .......................5

   IV.   Plaintiff States A Claim For Common Law Negligence ..........................................10

      a.   Hardwork Owed Plaintiff A Duty Of Care To Prevent Foreseeable Harm ..........11

      b.   Hardwork Breached Its Duty To Plaintiff ............................................................15

      c.   Plaintiff Sufficiently Pled Actual and Constructive Notice .................................15

   V.    Plaintiff Sufficiently Pled A Claim For NIED .........................................................17

CONCLUSION....................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*"John Doe 1" v. Bd. of Educ. of Greenport Union Free Sch. Dist.*, 100 A.D.3d 703 (2d Dep't 2012) ................................................................................................................... 9

*Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012) .................................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2007) ................................................................................. 3, 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................... 4

*Ben v. United States*, 160 F. Supp. 3d 460 (N.D.N.Y. 2016) .................................................. 22

*Bennice v. Cosmoprof*, No. 1:23-CV-666, 2024 U.S. Dist. LEXIS 21998 (N.D.N.Y. Feb. 8, 2024) ...................................................................................................... 22, 23, 24

*Boyle v. Brewster Cent. Sch. Dist.*, 209 A.D. 3d 619 (2d Dep't 2022) ............................. 17, 18

*C.Q. v. Estate of Rockefeller*, No. 20-CV-2205 (VSB), 2021 U.S. Dist. LEXIS 203563 (S.D.N.Y. Oct. 21, 2021) .............................................................................. 16, 20

*Canosa v. Ziff*, 2019 U.S. Dist. LEXIS 13263  (S.D.N.Y. Jan. 28, 2019) ................................. 7

*Chepak v. Metro. Hosp., 555 F. App'x 74 (2d Cir. 2014)* ......................................................... 4

*Clark v. Target Corp.*, 2020 U.S. Dist. LEXIS 78473 (S.D.N.Y. May 4, 2020) .................... 13

*Doe v. Abdulaziz Bin Fahd Alsaud*, 12 F. Supp. 3d 674 (S.D.N.Y. 2014) .............................. 20

*Doe v. Congregation of the Mission of St. Vincent De Paul in Germantown*, 2016 NY Slip Op 32061(U) (Sup. Ct. September 13, 2017) ....................................................... 8, 9

*Doe v. Langer*, 206 A.D.3d 1325 (3d Dep't. 2022) ................................................................ 22

*Farrell v. U.S. Olympic & Paralympic Comm.*, 567 F. Supp. 3d 378 (N.D.N.Y. 2021) .......... 22

*Francis v. Kings Park Manor, Inc.*, 992 F.3d 67 (2d Cir. 2021) .............................................. 22

*Gonzalez v. City of the N.Y.*, 133 A.D.3d 65 (1st Dep't 2015) .................................................. 7

*Grabowski v. Orange Cty.*, 219 A.D.3d 1314 (2d Dept. 2023) ................................................ 21

*Gronski v. Cty. of Monroe*, 18 N.Y.3d 374 (2011) ................................................................. 16

*Haefeli v. Woodrich Eng'r Co.*, 174 N.E. 123 (N.Y. 1931)......................................................23

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009)..................................................................................5

*Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159 (2d Dep't 1997) ...........7

*Kush v. Buffalo*, 59 N.Y.2d 26 (1983) .......................................................................................12

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015).......................................................4

*Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209 (2d Cir. 2002)....................................13

*Maheshwari v. City of N.Y.*, 2 N.Y.3d 288 (2004)......................................................................16

*McGrier v. Capitol Cardiology*, No. 1:20-CV-1044 (LEK/DJS), 2021 U.S. Dist. LEXIS 150605

    (N.D.N.Y. Aug. 11, 2021) .......................................................................................................5

*Pecou v. Bessemer Tr. Co.*, No. 1:22-cv-01019-MKV, 2022 U.S. Dist. LEXIS 152259 (S.D.N.Y.

    Aug. 24, 2022) .......................................................................................................................5

*Polomie v. Golub Corp.*, 226 A.D.2d 979 (3d Dep't 1996) ........................................................16

*Pratt v. Robinson*, 39 N.Y.2d 554 (N.Y. 1976)....................................................................17, 18

*Pulka v. Edelman*, 40 N.Y.2d 781 (1976)..................................................................................13

*R.M. v. Rockefeller Univ.*, 2023 NY Slip Op 30192(U) (Sup. Ct., January 11, 2023)8, 9, 10, 11

*Roe v. Domestic & Foreign Missionary Soc'y of the Prot. Episcopal Church*, 198 A.D.3d 698

    (2d Dep't 2021).......................................................................................................................9

*Sandra M. v. St. Luke's Roosevelt Hosp. Ctr.*, 33 A.D.3d 875 (2d Dep't 2006).........................8

*Smith v. Hochul*, No. 5:21-CV-0035 (LEK/ATB), 2023 U.S. Dist. LEXIS 48137, (N.D.N.Y.

    Mar. 22, 2023).......................................................................................................................6

*Sokola v. Weinstein*, Index No. 950250/2019, 2023 NYLJ LEXIS 429 (Sup. Ct. February 7,

    2023) ...........................................................................................................................7, 8, 11

*Taggart v. Costabile*, 131 A.D.3d 243 (2d Dep't. 2015)..............................................22, 24, 25

*Turturro v. City of New York*, 28 N.Y.3d 469 (2016) .................................................................12

*Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)...............................................6

*Wilson v. Fabric Cellar, Inc.*, No. 20-CV-244S, 2021 U.S. Dist. LEXIS 130536 (W.D.N.Y. July 13, 2021) ................................................................................................................................. 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 3

Fed. R. Civ. P. 15(a)(1)(B) ........................................................................................................ 5

Fed. R. Civ. P. 8(d)(2) ............................................................................................................. 13

Plaintiff Kristina Sarhadi, by and through undersigned counsel of record, McAllister Olivarius, hereby submits this memorandum of law in opposition to Defendant Hardwork Distribution, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff brings the instant action pursuant to the New York Adult Survivors Act and New York Civil Practice and Law Rules Sec. 214-j. On October 1, 2010, Plaintiff was sexually assaulted by Defendant Justin Cathal Geever a/k/a Justin Sane ("Geever") in a Woodstock, New York motel room that was possessed, controlled, purchased, secured, and/or funded by Defendant Hardwork Distributions, Inc. ("Hardwork") for Geever's use during an Anti-Flag/ Hardwork-affiliated event. At all times relevant and material hereto, Geever was the lead singer of the band Anti-Flag and an employee, agent, representative, and/or executive of Hardwork, which existed only to service Anti-Flag.

Prior to his sexual assault of Plaintiff, Hardwork, by and through its executives and agents, Christopher Barker, Christopher Head, and Patrick C. Bollinger, had express and unambiguous notice and awareness that Geever was a predator with a propensity to commit acts of sexual assault, using his position with Anti-Flag and Hardwork to access his victims. Despite having this knowledge, Hardwork and its agents failed to take measures to ensure that Plaintiff and other similarly situated individuals were safe from Geever. To the contrary, Hardwork, for its own financial benefit, held Geever out as a champion of women and supporter of their rights.

On April 22, 2024, Hardwork filed its motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). On May 21, 2024, Plaintiff filed her cross-motion for leave to amend. Thus consistent with Second Circuit precedent, Hardwork's motion to dismiss is moot.

Even if the Court considers the motion to dismiss on the merits, Hardwork's arguments fail. Plaintiff's legal claims are valid and the evidence supporting them is substantial, and Plaintiff will prove them in due course. But that is not her burden at this stage. All that Plaintiff must do is state claims that are plausible on their face. She has more than met this burden.

Aware of this, Hardwork is doing its best to drag out the time before this case will see trial, throwing sand in the gears with a motion that repeatedly misstates and misapplies governing law. Apparently hoping the Court will not notice, it also deceptively mischaracterizes Plaintiff's claims and basic facts. Hardwork's arguments are meritless, and its motion should be dismissed in its entirety.

## PROCEDURAL HISTORY

1.      On November 22, 2023, Plaintiff initiated this action against Defendants in the Supreme Court of the State of New York, County of Ulster. (ECF No. 2).

2.      On January 9, 2024, Hardwork removed this action to the United States District Court for the Northern District of New York. (ECF No. 1).

3.      On February 21, 2024, Plaintiff filed a stipulated motion seeking to extend the deadline to file an amended complaint and set out dates for motion practice. The motion requested that (1) Plaintiff have until March 15, 2024 to file her first amended complaint ("FAC"); (2) Hardwork have until April 20, 2024 to file a pleading or motion in response to Plaintiff's FAC; (3) Plaintiff have until May 20, 2024 to respond to Hardwork's motion to dismiss; and (4) Hardwork have until June 3, 2024 to file its reply. (ECF No. 19).[1]

4.      The Court granted the stipulated motion extending deadlines on March 5, 2024. (ECF No. 23).

5.      On March 14, 2024, Plaintiff filed her FAC. (ECF No. 25).

---

[1] To date, Geever has not entered an appearance in this matter.

6.      On April 22, 2024, two days after the deadline imposed by the Court on March 5, 2024, Hardwork filed its motion to dismiss Plaintiff's FAC for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 28).

7.      On May 13, 2024, Plaintiff sought Hardwork's consent to file an amended complaint to address the arguments set forth in Hardwork's motion to dismiss.  That same day, Hardwork inquired about the Plaintiff's proposed amendments, presumably in order to determine whether it would consent to same.  On May 14, 2024, Plaintiff explained to Hardwork the basis for her proposed SAC.  Hardwork did not respond to Plaintiff's May 14, 2024 email.

8.      On May 15, 2024, Plaintiff's counsel telephoned Hardwork's counsel to discuss Plaintiff's amendment or, alternatively, additional time to file her response to Hardwork's motion to dismiss.  Plaintiff was unable to reach Hardwork.

9.      On May 15, 2024, Plaintiff, through letter motion, sought additional time to respond to Hardwork's motion to dismiss.  (ECF No. 32).

10.     The Court granted Plaintiff's motion on May 15, 2024, extending Plaintiff's time to respond to Hardwork's motion to dismiss to June 20, 2024.  (ECF No. 33).

11.     On May 21, 2024, Plaintiff filed her cross-motion for leave to amend.  (ECF No. 36).  The Court has not ruled on that motion.  Plaintiff is ready to file her amended complaint with the Court's permission.

## ARGUMENT

### I.   Legal Standard

In general, to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff need only plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2007). A claim has facial plausibility "when the pleaded actual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds . . . simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" that the defendant is liable on the claims asserted).

Plausibility is a lower standard than probability, and "a given set of actions may well be subject to diverging interpretations, each of which is plausible." *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012); *see also Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015) ("'[t]he plausibility standard is not akin to a 'probability requirement.'" (quoting *Iqbal*, 556 U.S. at 678)). When evaluating diverging interpretations, the Court should not choose between two plausible inferences that may be drawn from the factual allegations. *Anderson News, LLC*, 680 F.3d at 185. Rather, the Court must accept all factual allegations in the complaint as true, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 76 (2d Cir. 2015), and interpret those allegations by drawing all reasonable inferences in the plaintiff's favor. *See Chepak v. Metro. Hosp.*, 555 F. App'x 74, 76 (2d Cir. 2014) (citing *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009)).

## II.   Hardwork's Motion to Dismiss is Moot

On May 21, 2024, Plaintiff filed her cross-motion for leave to amend the complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B). (ECF No. 36). Pursuant to Fed. R. Civ. P. 15(a)(1)(B), "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Leave to amend should be freely given "when justice so requires." *Id.* As set forth in Plaintiff's cross-motion for leave to amend and incorporated by reference herein, Plaintiff's proposed amendment will not unduly prejudice Hardwork (*Id.*, Sec. III), is not unduly delayed or in bad faith (*Id.*, Sec. IV), and is not futile (*Id.*, Sec. V).

Courts within this Circuit have repeatedly denied motions to dismiss as moot when a plaintiff seeks leave to amend. *See McGrier v. Capitol Cardiology*, No. 1:20-CV-1044 (LEK/DJS), 2021 U.S. Dist. LEXIS 150605, at *6 (N.D.N.Y. Aug. 11, 2021) ("the preferred

course of action is to grant leave to amend even if doing so renders moot the motion to dismiss, rather than rendering moot the motion for leave"); *Pecou v. Bessemer Tr. Co.*, No. 1:22-cv-01019-MKV, 2022 U.S. Dist. LEXIS 152259, at \*3-4 (S.D.N.Y. Aug. 24, 2022) ("[granting plaintiff's motion for leave to amend and denying the pending motion to dismiss] is the preferred course where the amended complaint requires leave of court"); *Wilson v. Fabric Cellar, Inc.*, No. 20-CV-244S, 2021 U.S. Dist. LEXIS 130536, at \*5 (W.D.N.Y. July 13, 2021) (same).

Further, this Court and the Second Circuit have repeatedly expressed a longstanding preference for resolving matters on the merits and, in the interest of justice, permitting amendments of pleadings accordingly. *See Smith v. Hochul*, No. 5:21-CV-0035 (LEK/ATB), 2023 U.S. Dist. LEXIS 48137, \*6 (N.D.N.Y. Mar. 22, 2023) (citing *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)).  Consistent with this liberal standard, Plaintiff's cross-motion for leave to amend must be granted and Hardwork's motion to dismiss must be denied as moot.

### III.   Plaintiff's States A Claim For Negligent Supervision and Retention

Even if it considers the merits of Hardwork's motion, the Court must deny it.

Hardwork asserts that Plaintiff fails to allege a claim under the theory of *respondeat superior*.  (ECF Bo. 28-1, Mem. of Law, pp. 13-15).  But Plaintiff is not seeking to recover under that theory of liability.  Plaintiff's FAC does, however, lay out her claim for negligent hiring, supervision, and retention.

In order to state a claim for negligent hiring, supervision, or retention, a plaintiff must plead (1) the existence of an employee-employer relationship; (2) "that the employer knew or should have known of the employee's propensity for the conduct which caused the injury" (*Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 161 (2d Dep't 1997)); and (3) "a nexus or connection between the plaintiff's injuries and the defendant's

malfeasance." *Gonzalez v. City of the N.Y.*, 133 A.D.3d 65, 70 (1st Dep't 2015). "On a motion to dismiss, the bar for alleging an employer-employee relationship is not high." *Canosa v. Ziff*, 2019 U.S. Dist. LEXIS 13263, at *37-8 (S.D.N.Y. Jan. 28, 2019) (citations omitted) (finding that the plaintiff sufficiently pled an employee-employer relationship where she alleges that defendants "had some degree of control" over tortfeasor). A "predominant factor" in determining whether an employment relationship exists is the power to control the employee's conduct. *Sokola v. Weinstein*, Index No. 950250/2019, 2023 NYLJ LEXIS 429 (Sup. Ct. February 7, 2023).

In the case of an employer, Hardwork, and an employee, Geever, the focus is not on Hardwork's relationship with Plaintiff, Sarhadi, but its relationship with the tortfeasor, Geever.[2] *See Waterbury v. New York City Ballet, Inc.*, 205 A.D.3d 154, 161-62 (1st Dep't. 2022) (collecting cases). This is because "[t]he negligence of an employer… arises from its having placed the employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in making its decision concerning the hiring and retention of the employee." *R.M. v. Rockefeller Univ.*, 2023 NY Slip Op 30192(U) (Sup. Ct., January 11, 2023) (collecting cases). New York law does not require that the tort be conducted with an employer's chattels or an employer's premises; rather, the necessary nexus requires only that the employer is involved in or connected with the tort, including the employer's ability to control the employee and its knowledge of the need to exercise such control. *See e.g.*, *Waterbury*, 205 A.D.3d at 161-162; *Johansmeyer v. N.Y.C. Dep't of Educ.*, 165 A.D.3d 634, 634-37 (2d Dep't 2018); *Doe v. Congregation of the Mission of St. Vincent De Paul in Germantown*, 2016 NY Slip Op 32061(U), *4-8 (Sup. Ct. September 13, 2017) (hereinafter, "*Congregation*"); *Sokola*, 2023 NYLJ LEXIS 429, at *24-25. "The duty

---

[2] For ease of reference, plaintiff will use "employee" to describe any and all individuals, officers, directors, executives, representatives, agents, designees, and contractors subject to an employer or organization's control.

of care in supervising an employee extends to any person injured by the employee's misconduct." *Waterbury*, 205 A.D.3d at 162 (citing *Sandra M. v. St. Luke's Roosevelt Hosp. Ctr.*, 33 A.D.3d 875, 879 (2d Dep't 2006)).

New York courts have repeatedly found employers liable for negligent hiring, supervision, and retention involving an employee's sexual assault. *See e.g.*, *R.M.*, supra (denying employer's motion to dismiss plaintiff's negligence claim where the assault occurred outside of employer's premises and finding a nexus where plaintiff claimed that employer approved, sanctioned, and/or supervised employee's off-site conduct and used employee's off-site activities as a referral source); *Johansmeyer*, supra (denying employer's motion for summary judgment where employee assaulted plaintiff in their home after meeting them on employer's premises); *Congregation*, supra (denying defendants' motion to dismiss sexual assault that occurred off-premises); *c.f. Roe v. Domestic & Foreign Missionary Soc'y of the Prot. Episcopal Church*, 198 A.D.3d 698 (2d Dep't 2021) (finding that an employer was not liable for an employee's sexual assault where the assault occurred away from the employer's premises and the complaint was devoid of allegations that plaintiff had previously encountered the perpetrator or had prior contact with the plaintiff and defendants); *"John Doe 1" v. Bd. of Educ. of Greenport Union Free Sch. Dist.*, 100 A.D.3d 703 (2d Dep't 2012) (finding that an employer is not liable where plaintiff met tortfeasor employee outside of his employment with employer).

Justice Tisch's decision in *R.M. v. Rockefeller Univ.*, 2023 NY Slip Op. 30192(U), illustrates the application of a negligent retention and supervision claim under similar circumstances. In *R.M.*, the plaintiff was sexually assaulted by a volunteer physician while undergoing a physical examination at a boys' club. *Id.* at *1. The volunteer physician was separately an agent and representative of Rockefeller University. *Id.* Rockefeller University was wholly unrelated to the boys' club. Rockefeller University filed a motion to dismiss the

plaintiff's claim, asserting that it owed the plaintiff no duty of care because it did not have a relationship with the plaintiff, the abuse did not occur on Rockefeller University's premises, and that there was no nexus between the abuse and the physician's employment with Rockefeller University.  *Id.*  In denying Rockefeller University's motion, Justice Tisch applied the negligent hiring and supervision standard set forth above, holding that plaintiff sufficiently alleged that there was a nexus between the physician's affiliation with Rockefeller University and the alleged assaults simply because the plaintiff alleged that Rockefeller University "approved and/or sanctioned the physician's involvement" at the boys' club and used the boys' club as a "referral source."  *Id.* at *4-6.  Justice Tisch also acknowledged that for negligent supervision and retention claims, location of the assault is not dispositive.  *Id.* at *6.  He further opined that the physician's own conduct in assaulting plaintiff was not an "intervening independent act" that rendered his personal liability the sole and proximate cause of plaintiff's injury.  *Id.* at *10-11.

Similarly, Plaintiff's FAC alleges that she met Geever "at multiple live performances wherein Geever represented Hardwork" (FAC ¶ 136) and that Geever had a propensity to commit sexual assault or engage in sexual misconduct (FAC ¶¶ 10; 15-16; 141) which Hardwork, through its agents and executives, knew or should have known (FAC ¶¶ 18; 21; 48-53; 55-57; 135-136; 141-142; *see also* Sec. III(c), *infra*).  Plaintiff also alleges that Hardwork had the ability to control Geever, including his access to young women and underage fans, and allowed him to lead Anti-Flag despite knowing that he used the band's fame and feminist stance to disguise that he was a sexual predator.  (FAC ¶¶ 18; 138).  Plaintiff claims that Geever "used his power, influence, status, and facilities provided by Hardwork to access and sexually assault fans."  (FAC ¶ 142).

Plaintiff's FAC also sufficiently alleges a nexus between Hardwork's malfeasance and her injuries.  Plaintiff has alleged that Hardwork was sufficiently connected to Geever's assault

of Plaintiff through Geever's representation of Hardwork (FAC ¶ 143), use of venues, facilities, and motel rooms provided by Hardwork (FAC ¶ 144), and Hardwork also financially benefited from Geever's conduct.  (FAC ¶¶ 47; 61; 147).  Importantly, Plaintiff would not have been in a position to meet Geever and would have been spared from his sexual assault but for his relationship with Hardwork and Hardwork's negligence in failing to warn Plaintiff and failing to terminate, bar, disinvite, publicly admonish, or discipline Geever.  (FAC ¶¶ 47; 62-66; 146-149).  *See Sokola*, 2023 NYLJ LEXIS 429, at *22-23 (finding that plaintiff sufficiently pled a nexus between Harvey Weinstein's ("Weinstein") sexual assault and his affiliation with Disney when she alleged that Disney failed to adequately supervise and discipline Weinstein and that she would have been spared from the sexual assault if it were not for Disney's negligence).

Finally, Hardwork alleges that Geever's independent acts render Geever's liability the sole and only proximate cause of Plaintiff's alleged injury.  (ECF No. 28-1, Mem. of Law, p. 10).  "An intervening act will be deemed a superseding cause and will serve to relieve defendant of liability when the act is of such an extraordinary nature or so attenuates defendant's negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant."  *Kush v. Buffalo*, 59 N.Y.2d 26, 32-33 (1983).  However, "an intervening act may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act is the same risk which renders the actor negligent." *Turturro v. City of New York*, 28 N.Y.3d 469, 484 (2016) (citations omitted); *see also Waterbury*, 205 A.D.3d at 161-62) ("[t]he possibility that the harm might have occurred if a defendant had not breached its duty does not negate liability for the harm that occurred because the defendant did breach its duty").

As alleged in the FAC, Plaintiff met Geever on September 22, 2010 (FAC ¶¶ 62-66) while he was performing in the course and scope of his work as a representative of Hardwork subject to Hardwork's control.  (FAC ¶¶ 47; 138; 143).  As the New York Court of Appeals

recognized in *Turturro*, Geever's sexual assault of Plaintiff was the very same conduct that renders Hardwork (who was aware or should have known of Geever's propensity to commit sexual assault) negligent.  Consistent with New York precedent, Plaintiff has sufficiently pled a cause of action for negligent supervision, hiring, and retention.

## IV.    Plaintiff States A Claim For Common Law Negligence

Plaintiff's FAC also sufficiently pleads a cause of action for common law negligence. [3] In order to assert a claim for negligence under New York law, a plaintiff must establish (1) that defendant owed a duty of care to the plaintiff; (2) that the defendant breached that duty; (3) that the defendant's breach was the proximate cause of plaintiff's injuries; and (4) that the plaintiff was damaged.  *See Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002) (internal citations omitted).  "The plaintiff need not offer direct evidence in support of each element of its negligence claim.  Rather, it is enough plaintiff shows facts and conditions from which the negligence of the defendant may be reasonably inferred." *Clark v. Target Corp.*, 2020 U.S. Dist. LEXIS 78473 (S.D.N.Y. May 4, 2020) (cleaned up) (citations omitted).  It is well established that a defendant may be liable for negligence only if the defendant owes a duty to the plaintiff.  *Pulka v. Edelman*, 40 N.Y.2d 781, 782, 390 N.Y.S.2d 393, 358 N.E.2d 1019 (1976).  "In the absence of duty, there is no breach and without breach there is no liability." *Id.* (internal citations omitted).

Hardwork alleges that Plaintiff failed to state a claim for negligence because (1) Plaintiff failed to identify a duty owed to her; (2) Plaintiff has not alleged a breach of a duty owed to her; and (3) Plaintiff failed to anything other than "vague allegations" that Hardwork knew or should have known that Geever engaged in predatory behavior towards women.  For the reasons set forth below, Hardwork is incorrect on all accounts.

---

[3] Fed. R. Civ. P. 8(d)(2) provides "[a] party may set out 2 or more statements of a claim or a defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *See also Henry v. Daytop Village*, 42 F.3d 89, 95 (2d Cir. 1994) (noting that the Federal Rules permit pleading in the alternative)

### a.  Hardwork Owed Plaintiff A Duty Of Care To Prevent Foreseeable Harm

Hardwork contends that Plaintiff cannot establish any duty that it owed to her.  In taking this position, Hardwork offers several clumsy arguments: (1) that Plaintiff cannot identify a duty owed to her extending from the Anti-Flag concert on September 22, 2010 to her rape on October 1, 2010; (2) that Plaintiff's own conduct in agreeing to meet Geever on October 1, 2010 and agreeing to go to the motel was a superseding cause that bars liability; (3) that Geever's independent acts were the proximate cause of Plaintiff's injuries; and (4) that there was no relationship creating a duty between Hardwork and Plaintiff on October 1, 2010 (ECF No. 28-1, Mem. of Law, pp. 10-11).  But Hardwork's arguments are flawed.  It ignores allegations in Plaintiff's Complaint that clearly demonstrate Hardwork's duty to Plaintiff on October 1, 2020.

Plaintiff first met Geever on September 22, 2010 at an Anti-Flag concert in Brooklyn, New York.  (FAC ¶ 62).  She had been a fan of Geever and Anti-Flag for a decade, attending concerts and purchasing Anti-Flag merchandise generated by the activities of Hardwork since she was 11 years old.  (FAC ¶ 58; 60-61).  At all times relevant and material hereto, Geever served as both Anti-Flag's lead singer and Hardwork's president, executive, employee, director and agent.  (FAC ¶¶ 4; 16; 31; 57).  Anti-Flag's other members, Christopher Head, Christopher Barker a/k/a Chris No. 2, and Patric C. Bollinger a/k/a Pat Thetic, were executives, employees, directors and agents of Hardwork.  (FAC ¶ 20).  Hardwork and its agents were heavily involved in Anti-Flag and its members' tours and albums, with Hardwork financially benefiting from these activities.  (FAC ¶¶ 47; 61; 147).

During the course of the concert, Geever publicly and blatantly groomed Plaintiff, in front of Hardwork's agents.  (FAC, ¶¶ 63-65).  This was not unusual behavior for Geever.  Rather, his pattern of looking for attractive women in the audience, picking one out for special attention, making repeated eye contact and singing to them directly – whether the target was

underage or not, and whether the eventual sex was consensual or not – was something Hardwork's agents knew of prior to September 2010.  (FAC, ¶¶ 48-57; 98; 136; 141).

In this case, Geever, using his positions with Anti-Flag and Hardwork, invited Plaintiff after the concert to a screening of a movie featuring Anti-Flag music, a concert, and an after-party in Woodstock, New York on October 1, 2010, where he would be present and the star attraction for a group including many fans of Anti-Flag.  (FAC, ¶¶ 66-76).  She attended this event; afterwards he asked her to accompany him so she could have the exciting chance to listen to still more Anti-Flag music, a unique recording of Geever had never revealed to others. After ditching his alleged "straight-edge" persona and consuming alcohol (FAC, ¶¶ 79-80), and while serving in his capacity as Hardwork's agent, Geever brutally sexually assaulted Plaintiff in a motel that was secured by Hardwork and/or Geever as an agent of Hardwork, using funds generated in part by Hardwork.  (FAC, ¶¶ 84-92).

Despite Hardwork's assertion, Plaintiff does not contend that Hardwork's duty to Plaintiff extends indefinitely from the September 22, 2010 Anti-Flag concert (though Geever's grooming Plaintiff at the concert in front of Hardwork agents certainly demonstrates Hardwork's actual and constructive knowledge, notice, and awareness of Geever's predatory behaviors and propensity to commit sexual assault with Anti-Flag fans).  Rather, Plaintiff's FAC unambiguously contains allegations demonstrating a separate duty Hardwork owed to Plaintiff on October 1, 2010.  Specifically, Plaintiff alleges: (1) Hardwork directly or indirectly funded performance venues and accommodations used by Geever in his capacity as a Hardwork agent (FAC ¶ 139); and (2) Hardwork provided Geever, an individual it knew to be dangerous and have a propensity to commit sexual assault and abuse, with venues, facilities, and hotel rooms and/or funds to procure them, including the motel in Woodstock, New York (FAC ¶ 143).

A fundamental tenet of New York negligence jurisprudence is that the possessor of a property has a duty to maintain the premises in a reasonably safe condition and maintain

reasonable security measures to protect those lawfully on the premises from reasonably foreseeable criminal acts of third parties. *See Maheshwari v. City of N.Y.*, 2 N.Y.3d 288 (2004); *Polomie v. Golub Corp.*, 226 A.D.2d 979, 980 (3d Dep't 1996). The duty "is premised on the [possessor's] exercise of control over the property, as the person in possession and control of property is best able to identify and prevent any harm to others." *C.Q. v. Estate of Rockefeller*, No. 20-CV-2205 (VSB), 2021 U.S. Dist. LEXIS 203563 (S.D.N.Y. Oct. 21, 2021) (citing *Gronski v. Cty. of Monroe*, 18 N.Y.3d 374, 379 (2011)). Further, business owners also owe a duty to keep the premises reasonably safe for business visitors or invitees. *See Richling v. Rockwood & Co.*, 296 N.Y. 858, 859 (1947).

As detailed above, Plaintiff, a customer of Hardwork (FAC ¶¶ 61; 62), was invited by Geever, Hardwork's agent, to the motel, premises and facilities that were funded and controlled by Hardwork or obtained by Geever as an agent of Hardwork. (FAC ¶¶ 126; 139). Hardwork, in its capacity as the possessor and controller of the motel room in which Geever occupied and owner of the business that Plaintiff visited and financially supported, owed Plaintiff a duty to maintain the premises in a reasonably safe condition, free from dangers known to it. As detailed below, prior to his sexual assault of Plaintiff, Hardwork was expressly and unambiguously aware that Geever had a propensity to commit sexual assault on premises and venues affiliated with Hardwork. (FAC ¶¶ 48-57; 144). Despite having such knowledge, Hardwork permitted, authorized, and condoned Geever's behavior. Hardwork, therefore, indisputably owed a duty to Plaintiff, an invitee and customer, to warn her of Geever and otherwise ensure that she was safe and free from harm.

Hardwork also argues that Plaintiff's agreement to attend the October 1, 2010 movie screening, solo performance, and after-party was a superseding event that prohibits a finding of liability. As detailed above, Plaintiff does not assert that Hardwork owed a continuing duty to Plaintiff from September 22, 2010 through October 1, 2010. Instead, she asserts that her

13

actions *prior to* Geever's October 1, 2010 sexual assault in premises operated, maintained, controlled, and/or funded by Hardwork did not alleviate Hardwork's independent obligation to ensure that the premises it controlled on October 1, 2010 were safe and free from foreseeable haram such as Geever's sexual misconduct.  Taking all of the allegations as true and viewing them in the light most favorable to Plaintiff, as we must at the motion to dismiss stage, Plaintiff has unequivocally pled that Hardwork owed her a duty.

In an effort to demonstrate that it did not owe Plaintiff a duty of care, Hardwork relies on inapposite cases involving "claims made by underage students against schools."  Hardwork relies on two cases, *Boyle v. Brewster Cent. Sch. Dist.*, 209 A.D. 3d 619 (2d Dep't 2022) and *Pratt v. Robinson*, 39 N.Y.2d 554 (N.Y. 1976), purporting to establish that it has no liability, but these are factually distinguishable.  *Boyle* was a wrongful death action involving a student who committed suicide off school premises.  The decedent's mother brought an action against the school district under the theory of *in loco parentis*, a special duty schools owe their students based on their physical custody of students.  *Id.* at 620.  In granting the school district's *motion for summary judgment*, the Court found that the school district did not have liability for actions that occurred off premises when the decedent was no longer under the school's control.  *Id.* Similarly, *Pratt* also involves a student injured after he exited a bus provided by the school district.  39 N.Y.2d at 556.  The Court of Appeals found that the school no longer had an *in loco parentis* relationship with the student after he left the bus.  Plaintiff's claims against Hardwork are very different, both factually and in theories of liability.  Hardwork ignores a plethora of case law illustrating the very different standards that must be applied to Plaintiff's claims at the motion to dismiss stage.

As set forth above, Plaintiff has sufficiently pled facts sufficient to establish Hardwork's duty based upon her status as an invitee on the premises controlled by Hardwork and her status

14

as a customer.  This Court must, therefore, find that Plaintiff has sufficiently pled that Hardwork had a duty to Plaintiff.

### b.  Hardwork Breached Its Duty To Plaintiff

Hardwork asserts, if it owed a duty to Plaintiff, Plaintiff has failed to establish that it breached said duty (ECF 28-1, Mem. of Law, pp 9-11).  Again, Hardwork's arguments require it to disregard Plaintiff's actual allegations in the FAC.

Hardwork would have the Court believe that Plaintiff alleged that Hardwork breached its duty to Plaintiff simply by "allowing Geever to lock eyes with Plaintiff" and "singing and winking to her."  (ECF No. 28-1, Mem. of Law, p. 11).  Plaintiff does allege that Geever publicly engaged in grooming, and the conduct Hardwork describes was certainly Geever's *modus operandi*.  (FAC ¶ 57).  However, Hardwork conveniently ignores the FAC's "breach" allegations.  Plaintiff alleges that Hardwork breached its duty to her by: (1) failing to enact policies and procedures to protect Plaintiff and other similarly situated  on Hardwork-affiliated premises from sexual assault (FAC ¶ 140); (2) failing to warn Plaintiff and others similarly situated of Geever's propensity to commit sexual assault and other foreseeable harms (FAC ¶ 146; 148); (3) ignoring and financially benefitting from Geever's predatory and violent character (FAC ¶¶ 56; 147); (4) failing to protect Plaintiff from a known danger on its premises (FAC ¶ 148); and (5) providing, arranging, promoting, and permitting Geever to use his platform and affiliation with Anti-Flag and Hardwork as a means to access, groom, and sexually assault women and girls (FAC ¶ 149-150).  Plaintiff has undeniably pled that Hardwork breached its duty to Plaintiff.

### c.  Plaintiff Sufficiently Pled Actual and Constructive Notice

Hardwork asserts that Plaintiff fails to plead that it had notice of Geever's propensity to engage in sexual assault.  (ECF No. 28-1, Mem. of Law, pp. 11-12).  It alleges that Plaintiff simply "sprinkles the FAC with vague allegations that Hardwork 'knew or should have known'

that Defendant Geever allegedly engaged in some predatory behavior towards women." (*Id.*) It also oddly claims that Plaintiff needs to have pled that she "knew or should have known that Defendant Geever and Plaintiff, two of-age independent adults, would meet a week after the Anti-Flag concert and Defendant Geever would allegedly sexually assault Plaintiff." (*Id.*) This aggressive attempt to reinvent the negligence foreseeability requirement is misplaced. Plaintiff need not establish that it was reasonably foreseeable that she and Geever would meet after the September 22, 2010 show to establish liability for his later rape. She need only establish that Geever's October 1, 2020 behavior on premises controlled by Hardwork towards Plaintiff, an invitee and customer, was reasonably foreseeable. Her FAC certainly does so.

"In the context of sexual assault allegations, in order to survive a motion to dismiss, a plaintiff must in [her] complaint provide 'factual allegations concerning [the tortfeasor's] propensity for sexual assault,' as well as factual allegations 'suggesting that [the defendant] knew or should have known of any such prior acts' by the tortfeasor." *C.Q. v. Estate of Rockefeller*, 2021 U.S. Dist. LEXIS 203563 at *24 (citing *Doe v. Abdulaziz Bin Fahd Alsaud*, 12 F. Supp. 3d 674, 690 (S.D.N.Y. 2014)). The alleged prior misconduct "must be of the same kind that cause the injury; general, unrelated, or lesser allegations of prior wrongdoing are insufficient." *Id.* (citing *Abulaziz*, 12 F. Supp. 3d at 681).

The FAC is replete with allegations as to foreseeability and active and/or constructive notice. Plaintiff alleges that Hardwork's executives, employees, and agents, Barker, Head, and Bollinger, were aware of Geever's propensity to use his position within Hardwork and Anti-Flag to gain access to women, engage in grooming and predatory behavior, and engage in sexual assault and other sexual misconduct at events and venues affiliated with Hardwork. Specifically, Plaintiff alleges that (1) Hardwork's agents were aware of Geever's propensity to groom and spend time with underage girls (FAC ¶¶ 51; 56-57); (2) Barker, Hardwork's secretary, was made expressly aware of at least one sexual assault involving Geever (FAC ¶

16

52); and (3) that Geever publicly, openly, and obviously hugged and kissed minors at an album release party (FAC ¶ 53).  Plaintiff also alleges that Geever, in front of Hardwork's agents, engaged in open and notorious grooming at Anti-Flag shows, including the show on September 22, 2010.  (FAC ¶¶ 65-66).  Finally, Plaintiff alleges, in the alternative, that Hardwork's agents should have known of Geever's malicious conduct based upon their regular and frequent sharing buses, green rooms, hotels, and studios with Geever.  (FAC ¶¶ 49; 57; 146).[4]

Plaintiff's allegations as to foreseeability are well-pled and go above and beyond the pleading requirement set forth by New York appellate courts.  *See Grabowski v. Orange Cty.*, 219 A.D.3d 1314, 1315 (2d Dept. 2023) (finding plaintiff sufficiently plead that that her sexual assault was foreseeable when alleging that defendant simply "knew or in the exercise of reasonable care should have known" of the perpetrator's propensity to commit sexual assault).  Plaintiff has, therefore, sufficiently pled that Geever's conduct was reasonably foreseeable and that Hardwork had actual or constructive notice of Geever's propensity to commit sexual assault.

## V.  Plaintiff Sufficiently Pled A Claim For NIED

Hardwork asserts that Plaintiff cannot establish a claim for negligent infliction of emotional distress because (1) Plaintiff has not alleged properly alleged that Hardwork breached a duty owed to her; and (2) Plaintiff's independent decisions "are separate actions that sever any casual connection between any alleged conduct or omission by Hardwork and Plaintiff's injury."  Hardwork's regurgitation of its opposition to Plaintiff's negligence claim is no more persuasive here.

---

[4] Hardwork claims that Plaintiff's "hearsay reports" of Geever's prior victims and notice to Hardwork agents "fail to include any verifiable details and cannot support Plaintiff's claim."  (ECF No. 28-1. P. 12, n. 5).  Hardwork cites to nothing in support of its position.  Because no such authority exists, Plaintiff is not required to produce evidence to support her claims at the pleading stage.  Plaintiff need only plead sufficient facts to raise a reasonable expectation that discovery will reveal evidence that the defendant is liable on the claims asserted.

In order to state a cause of action for negligent infliction of emotional distress ("NIED") under the direct duty theory under New York law, a plaintiff must allege (1) a breach of duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm. *Farrell v. U.S. Olympic & Paralympic Comm.*, 567 F. Supp. 3d 378 (N.D.N.Y. 2021) (citing *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021)); *Bennice v. Cosmoprof*, No. 1:23-CV-666, 2024 U.S. Dist. LEXIS 21998, at *15 (N.D.N.Y. Feb. 8, 2024).[5] Extreme and outrageous is not an essential element to recover damages for negligent infliction of emotional distress. *See Taggart v. Costabile*, 131 A.D.3d 243, 245 (2d Dep't. 2015) ("we now clarify that extreme and outrageous conduct is not an essential element of a cause of action alleging negligent infliction of emotional distress"); *see also Doe v. Langer*, 206 A.D.3d 1325, 1331 (3d Dep't. 2022); *Ben v. United States*, 160 F. Supp. 3d 460, 484 (N.D.N.Y. 2016).

Plaintiff's NIED claim against Hardwork arises from two separate and distinct relationships between Hardwork and Plaintiff: (1) on October 1, 2010, Plaintiff was an invitee on the premises controlled by Hardwork and was subjected to an individual known to perpetuate sexual assault by Hardwork's executives, agents, and employees; and (2) Plaintiff's relationship to Hardwork as a customer and business invitee. With respect to Plaintiff's relationship to Hardwork as an invitee, as set forth in Sec. III above, Plaintiff has sufficiently pled that Hardwork owed a duty to Plaintiff and breached that duty.

This Court, applying New York law, has explicitly recognized that businesses owe customers or business invitees "a specific duty of care to warn of dangers that are known, or reasonably should be known of the premises." *Bennice*, No. 1:23-CV-666, 2024 U.S. Dist. LEXIS 21998, at *15 (cleaned up) (citing *Haefeli v. Woodrich Eng'r Co.*, 174 N.E. 123, 125

---

[5] Hardwork does not contest that Plaintiff failed to plead emotional harm or circumstances providing some guarantee between the breach and the emotional harm.

(N.Y. 1931)).  In *Bennice*, plaintiff was a customer of defendant cosmetic store.  *Id.* at *1.  After an unremarkable visit, plaintiff received a call from the police that she had been reported by the defendant for shoplifting and was banned from the store.  *Id.* at *2.  Two weeks later, after plaintiff attempted to rectify the situation with defendant's corporate office, plaintiff received a second call from the police reporting that she had been accused of shoplifting and harassment by defendant's employees.  *Id.* at *2-3.  Plaintiff alleged that as a result of defendant's conduct, she suffered loss of significant income and needed to make frequent visits to her physician for monitor a heart condition that was exacerbated by defendant's conduct.  *Id.* at *3.  Plaintiff filed a lawsuit alleging, amongst other things, NIED.  *Id.* at *15.  The defendant moved to dismiss plaintiff's NIED claim for failure to state a claim because plaintiff failed to identify a specific duty of care owed to her.  *Id.* at *16.  In denying defendant's motion to dismiss, Judge Hurd opined that the plaintiff had sufficiently pled a cause of action for NIED and recognized that the defendant, as a business owner, owed a specific duty to plaintiff as a customer or invitee.  *Id.*

Similarly, Hardwork owed a duty to Plaintiff as a customer and business invitee.  As set forth in the FAC, Plaintiff was a dedicated fan of Anti-Flag since 2000.  (FAC ¶ 58).  Hardwork was formed by Geever, Head, Barker, and Bollinger, in 2003 and was became involved in and financially benefited from Anti-Flag's tours and records, as well as the endeavors of Anti-Flag band members.  (FAC ¶ 47).  Throughout her Anti-Flag fandom, Plaintiff was a regular customer of Anti-Flag concert tickets and merchandise which financially benefited Hardwork.  (FAC ¶ 61).  Plaintiff met Geever on September 22, 2010 at a concert from which Hardwork derived a direct financial benefit.  (FAC ¶ 62).  Geever then, using his position and influence Anti-Flag's singer and Hardwork's president, invited Plaintiff to the October 1, 2010 events in Woodstock, New York, events which Hardwork funded and financially benefitted from.  (FAC ¶¶ 47; 66; 147).  Geever then proceeded to sexually assault Plaintiff.  (FAC ¶¶ 85-92).

19

Hardwork continued to maintain a duty to Plaintiff during the duration of her business invitee/customer relationship with it.  Hardwork, knowing of Geever's propensity to engage in sexual assault (Sec. III(c), above) breached this duty by failing to implement measures to prevent the sexual assault of Plaintiff (FAC ¶ 157) and failing to warn Plaintiff of a known harm (FAC ¶¶ 99; 146; 148).  Plaintiff has undoubtedly properly pled a claim for NIED and, at the very least, is entitled to discovery to flesh out this claim.  Hardwork's motion to dismiss Plaintiff's NIED claim should, therefore, be denied.

Hardwork relies on *Taggart*, 131 A.D.3d 243, to demonstrate that Plaintiff's independent decisions sever any causal connection between Hardwork's conduct and omissions and Plaintiff's injury.  That reliance is wildly misplaced.  In *Taggart*, the plaintiffs initiated a lawsuit against the defendants for NIED.  The plaintiffs alleged that the defendants' tenants breached the peace by hosting large parties at all hours of the night which caused impediments to the flow of traffic and entailed loud music, public alcohol consumption, and the open use and sale of illegal drugs.  The plaintiff also alleged that, after they called police to break up the defendants' tenants' party, two armed men wearing ski masks entered the plaintiff's home, physically dragged the plaintiff out of bed, and threatened him.  In dismissing the plaintiff's NIED claim, the Second Department held that the plaintiffs failed to allege facts that would establish that their injury was "a direct, rather than a consequential, result of the breach [of defendants' duty]."  *Id.* at 256.  The Court found that criminal acts by third parties were not a normal and foreseeable consequence of the defendants' breach of their statutory obligation to keep the peace.  *Id*.

The facts at issue are obviously distinguishable from *Taggart* for several reasons.  First, unlike the defendant neighbor in *Taggart*, Plaintiff has not alleged that Hardwork knew about Geever's propensity to commit unspecified vague bad or illegal acts based on different conduct unknown to it.  Plaintiff alleges that Hardwork had express and unambiguous knowledge or

should have known of Geever's propensity to commit sexual assault prior to his sexual assault of Plaintiff and failed to institute measures to protect Plaintiff and others similarly situated from this foreseeable harm.  Geever engaged in the exact criminal conduct Hardwork knew he had previously engaged in.  Second, unlike the defendant landowner in *Taggart*, Hardwork owed a duty to Plaintiff based on her status as an invitee on premises controlled by Hardwork and as a customer of Hardwork.

Plaintiff has sufficiently pled a cause of action against Hardwork for NIED.  Based on the foregoing, the Court must deny Hardwork's motion to dismiss Plaintiff's NIED claim for failure to state a cause of action.

## CONCLUSION

For the reasons set forth above, consistent with the Second Circuit's longstanding preference for resolving matters on the merits and liberal standard on amending pleadings, deny Hardwork's motion to dismiss as moot, Plaintiff respectfully requests this Court grant her cross-motion for leave to amend, and for such other relief deemed just and proper.

Dated: New York, New York
        June 20, 2024

                                        **McALLISTER OLIVARIUS**

                                        /s/ *John F.O. McAllister*
                                        John F.O. McAllister
                                        641 Lexington Avenue
                                        13th Floor
                                        New York, NY 10022
                                        Telephone: (212) 433-3456
                                        jmcallister@mcolaw.com

                                        *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 20, 2024, a true and correct copy of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss was delivered via CM/ECF to the following:

Stuart P. Slotnick (stuart.slotnick@bipc.com)

Dated: June 20, 2024

/s/ *John F.O. McAllister*
John F.O. McAllister