## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KRISTINA SARHADI,** | |
| Plaintiff, | Civil Action No. 1:24-cv-00031(BKS/CFH) |
| - against - | |
| **JUSTIN CATHAL GEEVER a/k/a JUSTIN SANE**, and **HARDWORK DISTRIBUTION**, **INC.**, and **DOE 1,** | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT PURSUANT TO FED. R. CIV. P. 15

**McALLISTER OLIVARIUS**
John F.O. McAllister
641 Lexington Avenue
13th Floor
New York, NY 10022
Telephone: (212) 433-3456
jmcallister@mcolaw.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................... iii

PRELIMINARY STATEMENT..................................................................................1

FACTUAL AND PROCEDURAL HISTORY .........................................................2

ARGUMENT .............................................................................................................6

    I.    Plaintiff Is Entitled to an Entry of Default Judgment Against Geever...................6

    II.    The Court May Set Damages Without an Inquest ..................................9

    III.    Plaintiff Is Entitled to Both Compensatory and Punitive Damages.................11

      A.    Plaintiff Is Entitled to Compensatory Damages................................. 11

      B.    Plaintiff Is Entitled to Punitive Damages.........................................17

CONCLUSION.........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.B. v. Staropoli*, No. 08 Civ. 4585 (LMS), 2013 U.S. Dist. LEXIS 206771 (S.D.N.Y. Dec. 11, 2013) ...................................................................................................................................10

*Avail 1 LLC v. Lemme,* No. 1:23-CV-1527 (BKS/CFH), 2024 U.S. Dist. LEXIS 193905 (N.D.N.Y. Oct. 24, 2024) (Sannes, J.) ...................................................................................7

*BMW of N. Am., Inc. v. Gore,* 517 U.S. 559 (1996) ..................................................................17

*Byrnes v. Angevine*, No. 3:12-CV-1598, 2015 U.S. Dist. LEXIS 78261 (N.D.N.Y. June 17, 2015) ...............................................................................................................................11, 17

*Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.,* 699 F.3d 230 (2d Cir. 2012) ...............................................................................................10

*City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) .................................6, 7

*Crowley v. Tran*, No. 3:24-cv-00833 (BKS/ML), 2024 U.S. Dist. LEXIS 231223 (N.D.N.Y. Dec. 20, 2024) (Sannes, J.) ...................................................................................................7

*Doe v. Alsaud*, No. 13 Civ. 571, 2017 U.S. Dist. LEXIS 167359 (S.D.N.Y. Oct. 10, 2017) ..11, 12, 18

*Doe v. Gooding*, No. 20-cv-06569 (PAC). 2021 U.S. Dist. LEXIS 141877 (S.D.N.Y. July 29, 2021) ....................................................................................................................6, 7, 9

*Doe v. Hyassat*, No. 18-Civ-6110 (PGG) (OTW), 2024 U.S. Dist. LEXIS 81448 (S.D.N.Y. May 3, 2024) ...............................................................................................................9, 12, 18

*Doe v. Warren*, No. 20-CV-9522 (ER) (VF), 2024 U.S. Dist. LEXIS 106767 (S.D.N.Y. May 3, 2024) ...................................................................................................................................17

*Estevez-Yalcin v. Children's Vill.*, No. 01-CV-8784 (KMK), 2007 U.S. Dist. LEXIS 69511 (S.D.N.Y. Sep. 12, 2007) ...................................................................................................10

*Finkel v. Romanowicz*, 577 F.3d 79 (2d Cir. 2009) ...................................................................7

*Fustok v. Conticommodity Servs., Inc.,* 873 F.2d 38 (2d Cir. 1989) ........................................10

*Gavel v. Korang,* No. 20-CV-3475 (LJL) (VF), 2024 U.S. Dist. LEXIS 155940 (S.D.N.Y. Aug. 28, 2024) ...............................................................................................................................8

*Girden v. Sandals Int'l*, 262 F.3d 195 (2d Cir. 2001) ..............................................................8

*Henry v. Oluwole*, 108 F.4th 45, 52 (2d Cir. 2024) ..................................................................6

*Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993) ................................................................8

*Ismail v. Cohen*, 899 F.2d 183 (2d Cir. 1990) ........................................................................11

*Lent v. CCNH, Inc.*, No. 5:13-CV-00942 (MAD/ATB), 2015 U.S. Dist. LEXIS 154349 (N.D.N.Y. Nov. 16, 2015) ..................................................................................................11

*Maitrejean v. Levor Prof. Corp.*, 87 A.D.2d 605, *aff'd*, 57 N.Y.2d 902 (1982) ......................17

*Mathie v. Fries*, 935 F. Supp. 1284 (E.D.N.Y. 1996), *aff'd*, 121 F.3d 8008 (2d Cir. 1997) ....11

*New York v. Green*, 420 F.3d 99 (2d Cir. 2005) ........................................................................6

*Noonan v. Becker*, No. 14-CV-4084 (LTS) (JLC), 2018 U.S. Dist. LEXIS 60704 (S.D.N.Y. Apr. 10, 2018) .............................................................................................................12, 18

*Offei v. Mahmoud Abdel-Salam Omar*, No. 11 Civ. 4283 (SAS) (MHD), 2012 U.S. Dist. LEXIS 80171 (S.D.N.Y. May 18, 2012) ...................................................................................11, 17

*Ortiz v. New York City Hous. Auth.,* 22 F. Supp. 2d 15 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 234 (2d Cir. 1999) ........................................................................................................................12

*Pantages v. L.G. Airport Hotel Assocs., Inc.,* 187 A.D. 273 (App. Div. 1st Dept. 1992) ........12

*Santana v. Latino Express Rests., Inc.,* 198 F. Supp. 3d 285 (S.D.N.Y. 2016) .........................7

*Splawn v. Lextaj Corp.,* 197 A.D.2d 479, 480 (App. Div. 1st Dept. 1993) ..............................12

*United Nat'l Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351 (2d Cir. 1993) ....................................8

*United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105 (2d Cir. 1993) ................8

*Walker v. Sheldon,* 10 N.Y.2d 401 (1961) ..............................................................................17

**Rules**

Fed. R. Civ. P. 55 .......................................................................................................... 6

Fed. R. Civ. P. 55(b)(2) .............................................................................................. 10

N.D.N.Y. R. 55.1 ......................................................................................................... 6

## PRELIMINARY STATEMENT

Plaintiff Kristina Sarhadi ("Plaintiff") brings this Motion for Default Judgment ("Motion") against Defendant Justin Geever a/k/a Justin Sane ("Geever"). As detailed in her Amended Complaint and declaration, Plaintiff was a longtime fan of Geever, his band, and their forward thinking, feminist messages. Acutely aware of this, Geever lured Plaintiff into his motel room and violently raped her on October 1, 2010.

As a result of Geever's acts, Plaintiff has suffered, and continues to suffer, severe and permanent mental, psychological, and emotional injuries. Plaintiff has been diagnosed with and treated for, *inter alia*, C-PTSD, clinical depression, ADHD resulting from trauma, emotional hyperarousal, and rejection sensitivity dysphoria. Geever's sexual assault of Plaintiff has affected every facet of her life. Not a day goes by where Plaintiff does not think about Geever's rape. She continues to suffer from night terrors and flashbacks.

Plaintiff has brought claims against Geever for assault, battery, and intentional infliction of emotional distress. Despite being served with Plaintiff's Complaint, Defendant Hardwork Distribution, Inc.'s Notice of Removal, and Plaintiff's Amended Complaint, as well as being keenly aware of Plaintiff's allegations and the mountain of press related to same, Geever has failed to answer or otherwise respond to Plaintiff's allegations for over a year.

Accordingly, Plaintiff requests that this Court enter default judgment against Geever for assault, battery, and intentional infliction of emotional distress. Plaintiff further requests an award of both compensatory and punitive damages. In support of this Motion, Plaintiff has presented sufficient testimonial and documentary evidence for the Court to award same, and to do so without an inquest.

## FACTUAL AND PROCEDURAL HISTORY

The details of Geever's heinous sexual assault of Plaintiff, and the effects thereof, are set forth in Plaintiff's Amended Complaint ("Am. Compl."), *see* ECF No. 25, and further supplemented by Plaintiff's documentary evidence in connection with this Motion.

Plaintiff began listening to Anti-Flag when she was 11 years old. Am. Compl., ¶ 58. Anti-Flag, and its lead singer Geever, attracted young female fans like Sarhadi by making them feel like they were in a like-minded, safe community. *Id.*, ¶ 59. Plaintiff, like many of Anti-Flag's fans, became deeply committed to the band because she identified with its unusual, counter-cultural message and looked up to its members as brave, exciting exemplars of a better way of organizing society. *Id.* Anti-Flag was Plaintiff's favorite band. *Id.*, ¶ 60. She attended several Anti-Flag concerts and purchased and collected Anti-Flag merchandise. *Id.*, ¶ 61.

On September 22, 2010, after graduating from college, Plaintiff attended an Anti-Flag concert at a venue called the Bell House in Brooklyn, New York. *Id.*, ¶ 62; *see also* McAllister Dec., **Ex. H** (hereinafter, "Plaintiff Dec."), ¶ 6. As Plaintiff watched from the front row, Geever locked eyes with her and began singing to and winking at her. Am. Compl., ¶ 63. After the concert, Geever jumped off stage, hugged Plaintiff, and asked where she was from. *Id.*, ¶ 64. Geever was flirtatious towards Plaintiff, but she did not reciprocate because she was in a committed long-term relationship. *Id.*, ¶ 65. Geever invited Plaintiff to the Woodstock Film Festival the following week showcasing "Sounds Like a Revolution," a film that featured Anti-Flag and Geever. *Id.*, at ¶ 66; Plaintiff Dec., ¶ 8. Geever was also planning to perform at the festival. *Id*. Trusting Geever's strong feminist record, Plaintiff felt safe and agreed to meet him at the film festival. *Id.*, ¶ 67.

On October 1, 2010, Plaintiff met Geever at the Rosendale Theatre after the screening of the film. *Id.*, ¶¶ 69-71; Plaintiff Dec., ¶¶ 10-11. Together, Plaintiff and Geever traveled to the Bearsville Theater in Woodstock, New York where Plaintiff watched Geever perform from

the front row. Am. Compl., ¶ 71. Afterwards, Geever asked Plaintiff to accompany him to an afterparty at a nearby private residence. *Id.*, ¶ 72. During the drive, Geever showered Plaintiff with compliments. *Id.*, ¶ 73. Plaintiff reminded Geever that she was in a committed relationship. *Id.* Geever mentioned that he had recorded a new song with another famous artist, Billy Bragg, and wanted her to hear it. *Id.*, ¶ 76. Geever told Plaintiff that the song was on his laptop at his motel, The Lodge. *Id.*, ¶ 77. Plaintiff agreed to drive Geever to the motel to hear the song. *Id.*, ¶¶ 77-78.

On the way to the motel, Geever told Plaintiff that they should stop at the motel bar and drink together. *Id.,* ¶ 79. This was inconsistent with Anti-Flag and Geever's pro-sobriety message. *Id.* At the time, Plaintiff was "straight edge," meaning she did not drink alcohol or do drugs. *Id.* Geever acknowledged their mutual "straight edge" stance, but he suggested they should "break the edge" that night, since they were each dealing with unfortunate personal circumstances. *Id.* Geever proceeded to drink and dance around the bar while Plaintiff waited to hear the song. *Id.*, ¶¶ 80-82. Plaintiff was eventually pressured to drink beer and take a pickleback shot with Geever. Plaintiff Dec., ¶ 19. Plaintiff was inexperienced with alcohol, but trusted Geever. *Id.*

Geever eventually brought Plaintiff to the motel room to hear the song. Am. Compl., ¶¶ 82-83. Plaintiff was surprised to see Geever closing the curtains and locking the door. *Id.*, ¶ 84. As Plaintiff looked at the laptop bag on the dresser, Geever screamed "Football Tackle" and tackled Plaintiff from behind onto the bed. *Id.*, ¶ 85. Plaintiff initially thought Geever was playing around, but his face became scary, as if he became a different person. *Id.*, ¶ 86. Geever proceeded to restrain and strangle Plaintiff, forcing her to perform oral sex on him. *Id.*, ¶ 87. When she could breathe, she begged him to stop. *Id.*, ¶ 88. Ignoring her pleas, Geever proceeded to violently rape Plaintiff. *Id.*, ¶¶ 89-91. Plaintiff felt like Geever was going to kill her during the assault. Plaintiff Dec., ¶ 23. After the rape, Geever passed out on top of Plaintiff.

*Id.*, ¶ 25.  Plaintiff waited in terror for what felt like a long time and slowly slid out from beneath Geever.  *Id.*  Plaintiff was afraid that if she woke him, she would have to endure another rape.  *Id.*  Fortunately, Plaintiff was able to escape Geever's motel room without waking him. *Id.*

On July 19, 2023, Plaintiff publicly discussed Geever's sexual assault on a podcast titled "enough."  Am. Compl., ¶ 93.  She did not name Anti-Flag or Geever but gave the details of the night and how she was betrayed by the "anti-rape" lead singer of a political punk band. *Id.*  That same day, Anti-Flag and Geever announced that the band was dissolving.  *Id.*, ¶ 94. Anti-Flag also took down their website and deleted their social media accounts.  *Id.*  In September 2023, *Rolling Stone* published an article highlighting Plaintiff's sexual assault by Geever and published the accounts of 12 other women Geever mistreated, three of whom were underage or just beyond when they had encountered him at Anti-Flag concerts.  *Id.*, ¶ 96.[1] Following the *Rolling Stone* piece, Geever's Anti-Flag bandmates condemned Geever's "very sick" behavior.  *Id.*[2]  Since disclosing Geever's assault, Plaintiff has been attacked and ridiculed on social media.  Plaintiff Dec., ¶¶ 33-36.

As a direct result of Geever's conduct, Plaintiff has sustained serious and permanent psychological, mental, and emotional injuries.  *See* Plaintiff Dec., ¶¶ 37-64; *see also* McAllister Dec., **Ex. I** (hereinafter, "█████ Dec."), **J** (hereinafter, "█████ Dec."), and **K** (hereinafter, "█████ Dec.").  As set forth below, Plaintiff's injuries include low self-esteem, anxiety, panic attacks, post-traumatic stress disorder, eating disorders, stress, insomnia, nightmares, depression, suicidality, shame, disassociation, intimacy issues, fear, and trust issues.  Am. Compl., ¶ 100.  Sarhadi has been diagnosed with and treated for, *inter alia*, C-PTSD, clinical

---

[1]Cheyenne Roundtree, *The Punk-Rock Predator*, ROLLING STONE, Sept. 5, 2023, https://www.rollingstone.com/music/music-features/anti-flag-justin-sane-1234817170/.
[2]Cheyenne Roundtree, *Anti-Flag's Ex-Members Say 'F-ck You' to 'Very Sick' Justin Sane Amid Sexual Assault Accusations*, ROLLING STONE, Sept. 7, 2023, https://www.rollingstone.com/music/music-news/anti-flags-ex-members-speak-out-against-justin-sane-assault-accusations-1234818094/.

depression, ADHD resulting from trauma, emotional hyperarousal, and rejection sensitivity dysphoria. *Id.*

On November 22, 2023, Plaintiff filed her Complaint in the Supreme Court of the State of New York, County of Ulster. McAllister Dec., ¶ 5. Plaintiff's claims against Geever were revived pursuant to New York's Adult Survivors Act ("ASA"), CPLR § 214-j. Defendant Hardwork Distribution, Inc. ("Hardwork") removed this matter to this Court on January 9, 2024. ECF No. 1.[3] Plaintiff attempted to serve Geever the Complaint on two separate occasions before service was effectuated on January 30, 2024 pursuant to Fed. R. Civ. P. 5. McAllister Dec., ¶ 8. Geever failed to answer or otherwise respond to Plaintiff's Complaint within the time prescribed by Fed. R. Civ. P. 12(a), and thus was in default starting February 20, 2024. Geever was subsequently served with Hardwork's Notice of Removal, Hardwork's Corporate Disclosure, and the Civil Cover Sheet via United States First Class Mail on February 26, 2024. McAllister Dec., ¶ 9.

On March 5, 2024, the Court granted Plaintiff's Motion for Extension of Time to Amend Complaint. ECF No. 23. Plaintiff filed her Amended Complaint on March 14, 2024. McAllister Dec., ¶ 11. On March 14, 2024, Plaintiff served her Amended Complaint on Geever by sending it via certified mail to his residential address, *see* ECF No. 26, though service was not necessary since he was already in default for failing to appear. McAllister Dec., ¶ 12. Furthermore, Plaintiff's lawsuit against Geever was the subject of many articles published by reputable news sources so Geever had ample notice of Plaintiff's claims separate and apart from service of Plaintiff's Complaint and Amended Complaint. McAllister Dec., ¶ 13. Nevertheless, Geever failed to answer or otherwise respond to Plaintiff's Amended Complaint within the time prescribed by Fed. R. Civ. P. 12(a).

---

[3] Hardwork Distribution, Inc. was dismissed from this matter on December 18, 2024. *See* ECF No. 40

On April 23, 2024, the Clerk of the Court issued a Certificate of Default  *Id.*, ¶ 14, and the Court instructed Plaintiff to file her motion for default judgment within thirty days.  ECF No. 30.  However, Plaintiff filed a Cross-Motion for Leave to Amend on May 21, 2024, "resetting the clock" for purposes of finding Defendant in default.  ECF No. 36-37.  As such, she did not file her Motion for Default as to Geever.  The Court found good cause to extend Plaintiff's deadline to file the instant Motion on December 18, 2024.  ECF No. 40, at 19-20.  On January 15, 2025, the Court extended the deadline for Plaintiff to file the instant Motion to January 31, 2025.  ECF No. 43.

## ARGUMENT

### I.    Plaintiff Is Entitled to an Entry of Default Judgment Against Geever

Fed. R. Civ. P. 55 "provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of default, and second, the entry of default judgment." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)); *see also* N.D.N.Y. R. 55.1 (hereinafter "Local Rule 55.1").  As set forth above, the Clerk of the Court issued an entry of default on April 23, 2024 after Geever failed to answer or otherwise respond to Plaintiff's Complaint and Amended Complaint (or Hardwork's Notice of Removal and the litany of press and social media discussions regarding this matter).  As such, the first step in Rule 55's two-step process has been satisfied.

As to the second prong, Courts consider three factors in determining whether to grant a default judgment: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Doe v. Gooding*, No. 20-cv-06569 (PAC). 2021 U.S. Dist. LEXIS 141877, at *10 (S.D.N.Y. July 29, 2021) (citations omitted); *see also Henry v. Oluwole,* 108 F.4th 45, 52 (2d Cir. 2024) (applying the

same factors in determining whether to set aside a default judgment). The decision whether to enter default judgment is committed to the district court's discretion. *See Avail 1 LLC v. Lemme,* No. 1:23-CV-1527 (BKS/CFH), 2024 U.S. Dist. LEXIS 193905 (N.D.N.Y. Oct. 24, 2024) (Sannes, J.) (citations omitted). Here, each factor supports an entry of default judgment in favor of Plaintiff.

*First*, Geever has failed to appear, answer, or otherwise respond to Plaintiff's Complaint and Amended Complaint after being served, demonstrating unambiguously that his default is willful. He has also failed to respond to Plaintiff's allegations despite abundant press and social media interest in this case. *See* Footnote 4, *supra*. Geever's conduct in failing to respond is nothing if not willful. *See Gooding*, 2021 U.S. Dist. LEXIS 141877, at *10 (finding defendant's failure to appear or answer after being properly served willful for purposes of default judgment); *cf Crowley v. Tran*, No. 3:24-cv-00833 (BKS/ML), 2024 U.S. Dist. LEXIS 231223 (N.D.N.Y. Dec. 20, 2024) (Sannes, J.) (holding that defendant's failure to appear was not willful where County Attorney's Office represented that it would represent defendant but failed to timely appear).

*Second*, Geever has no meritorious defense to Plaintiff's claims. "A defendant who defaults thereby admits all 'well-pleaded factual allegations contained in the complaint.'" *Mickalis Pawn Shop, LLC*, 645 F.3d at 137 (cleaned up). Prior to entering default judgment, a district court is "required to determine whether the plaintiff's allegations establish defendant's liability as a matter of law." *Id.* (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). A court cannot determine whether an absent defendant has a meritorious defense to Plaintiff's claims. *See Santana v. Latino Express Rests., Inc.,* 198 F. Supp. 3d 285, 291 n.2 (S.D.N.Y. 2016).

Plaintiff has alleged three separate causes of action against Geever under New York law: (1) assault; (2) battery; and (3) intentional infliction of emotional distress ("IIED"). Under

New York law, assault is "an intentional placing of another person in fear of imminent harmful or offensive contact," while battery is an "intentional wrongful physical contact with another person without consent." *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) (quoting *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)). "[A] rape is 'an undisputed assault and battery.'" *United Nat'l Ins. Co.*, 994 F.2d at 108 (quoting *United Nat'l Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 354 (2d Cir. 1993)); *see also Gavel v. Korang,* No. 20-CV-3475 (LJL) (VF), 2024 U.S. Dist. LEXIS 155940, at *13-4 (S.D.N.Y. Aug. 28, 2024) (listing cases). As set forth in Plaintiff's Amended Complaint and Plaintiff's Declaration, Geever intentionally and brutally raped Plaintiff on October 1, 2010. *See* Am. Compl., ¶¶ 82-90; 104-108; 114-117; Plaintiff Dec., ¶¶ 20-25. Plaintiff has, therefore, sufficiently pled claims for assault and battery under New York law which Geever has not, and cannot, rebut. As such, default judgment is appropriate as to these claims.

Similarly, Geever has no meritorious defenses to Plaintiff's IIED cause of action. To assert a claim for IIED, Plaintiff must establish "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). The Amended Complaint alleges that Geever engaged in outrageous conduct including (1) pressuring Plaintiff to consume alcohol; (2) locking Plaintiff in his motel room and isolating her in close quarters; (3) tackling and physically restraining Plaintiff; (4) choking Plaintiff; (5) forcing Plaintiff to perform oral sex; (6) ignoring Plaintiff's cries for him to stop; (7) forcibly penetrating Plaintiff with his penis; and (8) using his celebrity to take advantage and groom Plaintiff. Amended Compl., ¶ 124; *see also* Plaintiff Dec., ¶¶ 19-25. As a result of Geever's extreme and outrageous conduct, Plaintiff suffered and continues to suffer significant trauma and emotional distress. *Id.*, ¶¶ 100; 125; 128. Courts have found similar allegations sufficient to award default judgment for an IIED

claim. *See Doe v. Hyassat*, No. 18-Civ-6110 (PGG) (OTW), 2024 U.S. Dist. LEXIS 81448, at *8-9 (S.D.N.Y. May 3, 2024) (granting default judgment as to plaintiff's IIED claim where defendant raped plaintiff and caused severe emotional distress). Again, Plaintiff has sufficiently asserted a claim for IIED under New York law. Default judgment is, therefore, appropriate.

*Third*, Plaintiff would undoubtedly be prejudiced by the denial of this Motion. Plaintiff filed her initial Complaint on November 22, 2023. Geever has failed to appear in the 14 months this case has been pending, which is prejudicial to Plaintiff. *See Gooding*, 2021 U.S. Dist. LEXIS 141877, at *10-11 (citations omitted) (plaintiff prejudiced by defendant's intentional failure to appear when case has been on the Court's docket for a year without any forward progression). Geever's failure to appear prolongs the time Plaintiff must continue to wrestle with her memories of his rape without resolution, and the contempt he shows the Court and Plaintiff compounds the damages he caused by raping her. Upon information and belief, Geever has left the United States specifically to elude these proceedings. Plaintiff should not be further punished by Geever's self-focused behavior. Furthermore, while these proceedings are unresolved, Plaintiff has had to contend with fulsome harassment, insult, and ridicule online by Geever's supporters, which he has done nothing to restrain.

Plaintiff has sufficiently established that Defendant is liable for his reprehensible conduct. She has sufficiently stated causes of action for assault, battery, and intentional infliction of emotional distress which the Court must accept as true. The Court, therefore, must enter default judgment against Geever.

## II.    The Court May Set Damages Without an Inquest

If the Court establishes that Geever has defaulted as to liability against Plaintiff, the Court must then assess whether Plaintiff was damaged by Geever's misconduct. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.,* 699 F.3d

230, 234 (2d Cir. 2012).  In assessing damages, a court may consider evidence presented at hearing *or* a review of detailed affidavits and documentary evidence.  *Id.* (citing Fed. R. Civ. P. 55(b)(2)); *see also Fustok v. Conticommodity Servs., Inc.,* 873 F.2d 38 (2d Cir. 1989) ("Fed. R. Civ. P. 55(b)(2) does not require a hearing devoted exclusively to damages") (cleaned up); *Estevez-Yalcin v. Children's Vill.*, No. 01-CV-8784 (KMK), 2007 U.S. Dist. LEXIS 69511 (S.D.N.Y. Sep. 12, 2007) (holding that a damages hearing not required after the court entered default judgment in sexual assault case where (1) plaintiffs submitted detailed affidavits from which the court could use to assess damages; (2) neither party requested a hearing and plaintiffs did not believe that a hearing was necessary; and (3) defendant did not dispute plaintiffs' allegations. *A.B. v. Staropoli*, No. 08 Civ. 4585 (LMS), 2013 U.S. Dist. LEXIS 206771 (S.D.N.Y. Dec. 11, 2013) (entering default judgment in favor of sexual abuse survivor without inquest).

In support of her Motion, Plaintiff has submitted a declaration which details the vile sexual assault committed by Geever and the mental, emotional, and psychological harm she has faced and will continue to face.  *See* Plaintiff Dec.  Plaintiff has also submitted: (1) the declaration of her sister, ███████ (███ Dec.), which details what she describes as two versions of Plaintiff, pre-rape and post-rape, as well as Plaintiff's executive and mood dysfunction; (2) the declaration of her partner, ████████ (████ Dec.) which substantiates Plaintiff's reports of night terrors, volatile emotions, and suicidal ideation; and (3) the declaration of Dr. ███████ (████ Dec.), an Oxford-trained clinical psychologist who has, among other things, diagnosed Plaintiff with PTSD, C-PTSD and Major Depressive Disorder.

Plaintiff has, therefore, submitted sufficient documentary evidence for the Court to award compensatory and punitive damages without an inquest.

### III.    Plaintiff Is Entitled to Both Compensatory and Punitive Damages

#### A.  Plaintiff Is Entitled to Compensatory Damages

"Compensatory damages recoverable for sexual assault include compensation for the injury itself, conscious pain and suffering including mental and emotional anxiety which can be based on the plaintiff's subjective testimony plus special damages, which need not be pleaded." *Doe v. Alsaud*, No. 13 Civ. 571, 2017 U.S. Dist. LEXIS 167359, *10 (S.D.N.Y. Oct. 10, 2017) (cleaned up) (citations omitted).  Under New York Law, "the measure of damages for pain and suffering and emotional distress is fair and reasonable compensation to be fixed by the trial of fact in light of all the evidence in the case." *Mathie v. Fries*, 935 F. Supp. 1284, 1304 (E.D.N.Y. 1996), *aff'd*, 121 F.3d 8008 (2d Cir. 1997).

Pain and suffering damages are "by their nature, not susceptible to mathematical computation.  Consequently, the law does not provide a precise formula by which pain and suffering and emotional distress may be properly measured and reduced to monetary value." *Byrnes v. Angevine*, No. 3:12-CV-1598, 2015 U.S. Dist. LEXIS 78261, at *6 (N.D.N.Y. June 17, 2015) (citing *Mathie*, 935 F. Supp. at 1304-05) (other citation omitted).  Therefore, appropriate compensatory awards should be made in "consideration of the amounts awarded in other, comparable cases."  *Mathie*, 121 F.3d at 813 (citations omitted); *see also Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990) (citations omitted).

Courts have repeatedly awarded substantial compensatory damages to rape and sexual assault survivors. *See Offei v. Mahmoud Abdel-Salam Omar*, No. 11 Civ. 4283 (SAS) (MHD), 2012 U.S. Dist. LEXIS 80171, at *15-16 (S.D.N.Y. May 18, 2012) ("A review of other cases involving sexual assaults reflect that they frequently trigger substantial awards") (cleaned up). Courts in the Second Circuit have regularly awarded millions in compensatory damages to survivors of particularly severe assaults.  *See  Lent v. CCNH, Inc.*, No. 5:13-CV-00942 (MAD/ATB), 2015 U.S. Dist. LEXIS 154349, *13; 21 (N.D.N.Y. Nov. 16, 2015) (collecting

cases and awarding $1.25 million in non-economic compensatory damages where plaintiff was sexually assaulted and manifested several psychological and emotional conditions); *Alsaud*, 2017 U.S. Dist. LEXIS 167359, at *11-16 (awarding $1.25 million in compensatory damages where plaintiff was drugged and raped, and later diagnosed with PTSD, anxiety disorder, and depression); *Hyassat*, 2024 U.S. Dist. LEXIS 81448, at *12 (awarding $1.25 million in compensatory damages where plaintiff was raped and diagnosed with, amongst other things, neurocognitive disorder, depressive disorder, anxiety disorder, and post-traumatic stress disorder); *Noonan v. Becker*, No. 14-CV-4084 (LTS) (JLC), 2018 U.S. Dist. LEXIS 60704, at *11-12 (S.D.N.Y. Apr. 10, 2018) (awarding $1.013 million in compensatory damages where plaintiff was drugged and sexually assaulted, and alter diagnosed with depression, acute stress reaction, and anxiety disorder);  *Ortiz v. New York City Hous. Auth.,* 22 F. Supp. 2d 15, 39 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 234 (2d Cir. 1999) (upholding a jury award of $3 million in compensatory damages where plaintiff was raped at gunpoint, diagnosed with PTSD, and suffered dramatic changes to the quality of her life); *Splawn v. Lextaj Corp.,* 197 A.D.2d 479, 480 (App. Div. 1st Dept. 1993) (upholding compensatory damage award of $1.8 million for past pain and suffering and $200,000 for future pain and suffering for a plaintiff who was raped in a hotel room); *Pantages v. L.G. Airport Hotel Assocs., Inc.,* 187 A.D. 273, 273 (App. Div. 1st Dept. 1992) (upholding award of $1.5 million for past pain and suffering and $375,000 for future pain and suffering for plaintiff who was raped in a hotel room).

Plaintiff, through her declaration and documentary evidence filed in support of this Motion, details Geever's disgusting rape and Plaintiff's extensive mental, emotional, and psychological injuries stemming from same.  As a result of Geever's rape, Plaintiff's medical and therapeutic providers have diagnosed her with C-PTSD, clinical depression, Major Depressive Disorder, Anxiety Disorder, migraines, ADHD resulting from trauma, emotional hyperarousal, and rejection sensitivity dysphoria.  Plaintiff Dec., ¶ 39.  But Plaintiff's injuries

are not limited to these diagnoses. She has experienced low self-esteem, panic attacks, disordered eating, suicidality, shame, disassociation, intimacy and trust issues, fear, embarrassment, mental anguish, and loss of enjoyment of life. *Id.*, ¶ 38.

Plaintiff's entire life was impacted by the events of October 1, 2010. Prior to the assault, Plaintiff was organized, confident, healthy, and happy. *Id.*, ¶ 49. She thrived in an academic environment, was social, and rational. *Id, ¶ 50.*; *see also* ███ Dec., ¶ 6. Geever's rape changed her. She became withdrawn, anti-social, hypervigilant, and distrustful of others to the point of paranoia. Plaintiff Dec., ¶ 51; *see also* ███ Dec., ¶ 15. Her personal habits and body changed. Plaintiff Dec., ¶¶ 51-52. Plaintiff has become disorganized, unable to multitask, and experiences inconsistent drive and work performance. *Id*; *see also* ███ Dec., ¶¶ 8-9.

Plaintiff experiences night terrors relating to Geever's violent assault. *Id.*, ¶ 54; ███ Dec., ¶ 5. Her night terrors often involve being confined to a small room, unable to escape. Plaintiff Dec., ¶ 54. She appears distressed, anguished, and anxious during these episodes, often crying or screaming in her sleep. ███ Dec., ¶ 5. It often takes Plaintiff hours to recover from these episodes. *Id.* When she is awake, Plaintiff frequently experiences flashbacks in which she relives Geever's assault. Plaintiff Dec., ¶ 55. She has intrusive thoughts and memories of October 1, 2010. *Id.* Her partner has witnessed Plaintiff display physical and emotional reactions when she is triggered or reminded of Geever's rape. ███ Dec., ¶¶ 6-7.

Plaintiff has contemplated suicide since Geever's assault. Plaintiff Dec., ¶ 61; *see also* ███ Dec., ¶ 11(h). On one occasion, Plaintiff told ███ that she was "just going to kill" herself. ███ Dec., ¶ 9. ███ was forced to lunge and remove Plaintiff's car keys from her hands, preventing her from harming herself. *Id.* On April 12, 2022, she left ███ a note implying that she was not returning. Plaintiff Dec., ¶ 61; ███ Dec., ¶

9. Plaintiff drove to Overlook Mountain in Woodstock, New York and planned to walk up the mountain, cut herself, and jump. Plaintiff Dec., ¶ 61. Plaintiff attributes her suicidal ideation to Geever's sexual assault. Plaintiff Dec., ¶ 61; ▮▮▮▮▮ Dec., ¶ 11(h); Ex. 1 at 17-18.

Plaintiff also began engaging in reckless behavior following Geever's rape. Plaintiff turned to alcohol and marijuana as a coping mechanism. Plaintiff Dec., ¶¶ 59-60; *see also* ▮▮▮▮ Dec., ¶ 16. She was charged for driving under the influence. Plaintiff Dec., ¶ 59. But her reckless behavior was not limited to alcohol and marijuana. In 2014, while coming to terms with what had happened to her, Plaintiff jumped off a 40-foot cliff into an abandoned quarry. *Id.*, ¶ 60. The jump resulted in serious injuries to Plaintiff's eye socket and orbital bones and required surgery and months of follow-up treatment. *Id.* Prior to Geever's sexual assault, Plaintiff had never intentionally engaged in any activity that could result in a broken bone or cause serious harm to her body. *Id.*

Plaintiff's experience with Geever destroyed the sense of safety and community she had in the punk scene. *Id.*, ¶ 56. She found friendship and a "chosen family" through Anti-Flag's fandom. *Id.* Geever's sexual assault stole Plaintiff's loved ones from her. *Id.* She stopped attending concerts and shows following the assault and lost touch with her friends, as seeing them was a reminder of Geever. *Id.*, ¶ 57. Plaintiff turned inward and isolated. *Id.* She felt thoroughly alone and did not think that her friends and family would understand her experience. *Id.*

Geever's sexual assault of Plaintiff affected her personal and professional life. Plaintiff's relationship with her partner has been strained due to her inability to cope with her trauma, lack of intimacy, and lack of interest in sex. *Id.*, ¶ 53; *see also* ▮▮▮▮ Dec., ¶ 12. Plaintiff questions her ability to marry and start a family as she continues to deal with the consequences of Geever's actions. Plaintiff Dec., ¶ 53.

Moreover, Plaintiff was evaluated by Dr. ████████ on January 9 and 10, 2025. ████ Dec., ¶ 6. The evaluation was comprehensive and encompassed discussions of Plaintiff's medical, social, and professional history, Geever's rape, and Plaintiff's post-rape medical treatment, professional struggles, and lifestyle changes. *Id.*, **Ex. 1**. Dr. ████████ administered the PTSD Scale for DSM-5 (CAPS-5) to assess whether Plaintiff qualified for a PTSD diagnosis. *Id.*, ¶ 8. Administration of the CAPS-5 evaluation involves the exploration of: (1) the "index" trauma (the worst event(s)); (2) symptomology within four PTSD clusters: intrusion symptoms, avoidance symptoms, negative changes to mood and cognition symptoms, and arousal and reactivity symptoms; (3) establishing a duration of more than one month; and (4) establishing a functional impairment and distress. *Id.* To meet the criteria for PTSD, a person must display at least one symptom of avoidance, two symptoms of negative alterations of mood and cognition, and at least two symptoms of hyperarousal that are functionally related to the trauma. *Id.*, ¶ 8. Following her evaluation, Dr. ████████ concluded that Plaintiff met the criteria for PTSD. *Id.*, ¶ 9. Plaintiff's PTSD symptoms include: intrusive memories, flashbacks, and nightmares, as well as emotional and physical reactivity to reminders of trauma (*Id.*, ¶ 9(b)); avoidance of internal (thoughts, feelings, and memories) and external (places, people, and situations) reminders of Geever's sexual assault (*Id.*, ¶ 9(c)); negative changes to her mood and cognition and to her beliefs about herself, others and the world (*Id.*, ¶ 9(d)); participating in risky behavior, demonstrating    irritable and aggressive behavior, hypervigilance, exaggerated startle response, and problems with concentration and sleep (*Id.*, ¶ 9(e)).

Furthermore, Dr. ████████ opined that Plaintiff met the criterial for C-PTSD, which, in addition to the core symptoms of PTSD, includes three further groups of symptoms: (1) difficulties managing and regulating one's emotions; (2) negative beliefs about oneself and

associated emotions such as shame and feelings of worthlessness; and (3) difficulties in sustaining relationships, trusting others, and feeling safe with other people. *Id.*, ¶ 10.

Dr. ███████ also concluded that Plaintiff met the diagnostic criteria for Major Depressive Disorder. *Id.*, ¶ 11. Plaintiff's symptoms of Major Depressive Disorder include: feeling debilitatingly depressed for days at a time, empty, and hopeless (*Id.*, ¶ 11(a)); loss of interest in activities (*Id.*, ¶ 11(b)); unintentional weight loss and lack of appetite (*Id.*, ¶ 11(c)); disrupted sleep (*Id.*, ¶ 11(d)); lack of motivation, fatigue, and exhaustion on a daily basis (*Id.*, ¶ 11(e)); feelings of self-blame and guilt (*Id.*, 11(f)); inability to function because of lack of concentration and indecisiveness (*Id.*, ¶ 11(g)); passive suicidal ideation (*Id.*, ¶ 11(h)).

In addition to damages for pain and suffering, Plaintiff seeks compensatory damages for future medical and psychological treatment. As set forth in Dr. ███████'s declaration, Plaintiff requires trauma-focused Cognitive Behavioral Therapy (TF-CBT) or Eye-Movement Desensitization and Reprocessing (EMDR) for treatment of PTSD, C-PTSD, and Major Depressive Disorder. *Id.*, ¶ 14(a)-(b). Dr. ███████ also recommended Compassion-Focused Therapy (CFT) for Plaintiff as she reported feelings of shame and other C-PTSD symptoms, collateral couples therapy for Plaintiff and her partner to address Plaintiff's trust issues stemming from Geever's sexual assault, family therapy to aid Plaintiff and her family members in rebuilding relationships which suffered following Geever's sexual assault, and psychiatric care and pharmacological treatment. *Id.*, ¶ 14(c)-(f). Per Dr. ███████ Plaintiff requires approximately $520,900 in future medical and psychological treatment. *Id.*, ¶ 14.

As is clear from her sworn declaration, as well as the sworn declarations of Ms. ███████ Mr. ███████ and Dr. ███████ Plaintiff has been severely affected by Geever's sexual misconduct. The deterioration of Plaintiff's quality of life is evidenced by a statement she often repeats to Mr. ███████ "today would be a good day if this had never happened to me," i.e., Geever's rape. ███████ Dec., ¶ 8.

The Court has authority to award significant compensatory damages in light of Plaintiff's demonstrated damages.  Pursuant to this authority, Plaintiff respectfully requests this Court to award $1,250,000 in past and future pain and suffering and $520,900 for future medical and psychological treatment.

### B.  Plaintiff Is Entitled to Punitive Damages

Punitive damages "are appropriate under New York law where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him." *Walker v. Sheldon,* 10 N.Y.2d 401, 404 (1961).  "An award of punitive damages must be based on 'quasi criminal conduct or of such utterly reckless behavior' or a demonstrated 'malicious intent' to injure the plaintiff, or gross, wanton, or willful fraud or other morally culpable conduct." *Maitrejean v. Levor Prof. Corp.*, 87 A.D.2d 605, 606, *aff'd*, 57 N.Y.2d 902 (1982).  Punitive damages should be based on "(1) the degree of reprehensibility of the defendant's conduct, (2) the ratio of punitive damages to compensatory damages, and (3) sanctions for comparable conduct." *Byrnes*, 2015 U.S. Dist. LEXIS 78261, at *6. (citations omitted).

The reprehensibility of the tortious conduct is "perhaps the most important" factor in determining an award of punitive damages. *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 575 (1996).  In the Second Circuit, multiple courts have awarded punitive damages in an amount equal to the award of compensatory damages where the conduct involved sexual assault. *See Doe v. Warren*, No. 20-CV-9522 (ER) (VF), 2024 U.S. Dist. LEXIS 106767, at *28 (S.D.N.Y. May 3, 2024) (collecting cases).

"New York courts have shown a willingness to impose [punitive damages] in the case of sexual assault, even in the absence of a fiduciary or equivalent relationship." *Offei* 2012 U.S. Dist. LEXIS 80171, at *22 (S.D.N.Y. May 18, 2012) (cleaned up) (citations omitted). Courts have awarded significant punitive damages in rape and sexual assault cases substantially

17

similar to this one. *Alsaud*, supra (awarding $1 million in punitive damages where plaintiff was drugged and raped, and later diagnosed with PTSD, anxiety disorder, and depression); *Hyassat*, supra (awarding $1.25 million in punitive damages where plaintiff was raped and diagnosed with, amongst other things, neurocognitive disorder, depressive disorder, anxiety disorder, and post-traumatic stress disorder); *Noonan*, supra (awarding $1 million in punitive damages where plaintiff was drugged and sexually assaulted, and alter diagnosed with depression, acute stress reaction, and anxiety disorder).

Applying the factors set forth in *Byrnes*, Plaintiff is entitled to punitive damages based on Geever's sexual assault. Geever engaged in disturbing and reprehensible conduct by raping Plaintiff, a long-time fan who idolized him. Plaintiff Dec., ¶¶ 3-4. He used his celebrity, position of power, and demonstrated history of support for feminist causes to lure Plaintiff in. Plaintiff believed that Geever was a safe space. *Id.*, ¶ 9. Knowing this, Geever preyed upon Plaintiff, brought her to his motel under false pretenses, and violently raped her. *Id.* ¶¶ 17-25. Geever's vile conduct, like the conduct of the assailants involved in the cases above, certainly constitutes egregious and dangerous conduct that warrants the award of punitive damages. Furthermore, as set forth above, Plaintiff is not asking the Court for punitive damages exceeding the compensatory damages sought.

As a consequence of Geever's vile conduct, Plaintiff continues to suffer a myriad of permanent mental, emotional, and psychological injuries, including PTSD, C-PTSD, Major Depressive Disorder, Anxiety Disorder, low self-esteem, anxiety, panic attacks, disordered eating, stress, insomnia, night terrors, flashbacks, suicidality, disassociation, intimacy and trust issues, fear, shame, embarrassment, mental anguish, and loss of enjoyment of life. Plaintiff Dec., ¶¶ 37-39; *see generally* █████ Dec. Geever has robbed Plaintiff of her health, happiness, and ability to control her life and her future. Plaintiff is forced to forever live with the memories of Geever's sexual assault which persist despite medical and therapeutic

treatment. Accordingly, Plaintiff respectfully requests that the Court follow the guidance of other cases in this Circuit and award punitive damages in the amount of $1,250,000.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiff respectfully requests this Court grant her motion for a default judgment against Geever pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rule 55.2, and award Plaintiff (1) $1,250,000 in past and future compensatory damages, (2) $520,900 for future medical and therapeutic care, (3) $1,250,000 in punitive damages, and (4) post judgment interest pursuant to 28 U.S.C. § 1961(a), which the Court may do so without an inquest.

Dated: New York, New York
January 30, 2025

**McALLISTER OLIVARIUS**

<u>/s/ *John F.O. McAllister*</u>
John F.O. McAllister
641 Lexington Avenue
13th Floor
New York, NY 10022
Telephone: (212) 433-3456
jmcallister@mcolaw.com

*Attorneys for Plaintiff*

19